[No. D019480. Fourth Dist., Div. One. May 21, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT BELL et al., Defendants and Appellants.

## COUNSEL

Martin Nebrida Buchanan and Anthony J. Dain under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BENKE, J.**—Appellant Robert Bell (Robert) was convicted of 10 counts of rent skimming, 1 count of attempted rent skimming, 13 counts of forgery, 14 counts of filing a false instrument and sentenced to a term of 4 years. Appellant Cathleen Bell (Cathleen) was found guilty of eight counts of rent skimming, one count of filing a false instrument, one count of forgery and was granted probation. They appeal, raising various claims concerning the statute of limitations, instructions to the jury, suppression motions, the constitutionality of criminal rent skimming statutes and sentencing.

In this opinion we conclude California's criminal rent skimming statute is constitutional. While rejecting numerous other claims of error, we find the jury was prejudicially misinstructed concerning the statute of limitations with regard to certain of the charges against Robert for forgery and the filing of false or forged documents. In addition we conclude the statute of limitations bars conviction for all but one count of rent skimming as to both Robert and Cathleen.

## FACTS

Appellants ran a rent skimming operation. Rent skimming occurs when, in the first year after acquiring residential real property, rent received for such property is used without first applying it to the payment due on mortgages and deeds of trust encumbering that property. Rent skimming is a crime when a person engages in such conduct with regard to five or more parcels within a two-year period. (Civ. Code,[1] §§ 890-894.)

Appellants established post office boxes, opened bank accounts and filed articles of incorporation using various names. Using legal notices in newspapers, they identified residential real property going into foreclosure. Robert approached the homeowners and explained that if the owners conveyed the property to him, he could assume the obligation on their deed of trust and they could walk away with their credit intact. The homeowners signed one or more grant deeds conveying their interest to one of appellants' fictitious business entities or signed a blank deed.

In some cases the homeowner remained in the residence and paid rent; in the other cases, the owner moved out and appellants rented the property to others. Appellants then applied for bankruptcy in the name of the entity to which the subject real property had been conveyed and foreclosure was automatically stayed. The stay delayed foreclosure and extended the period during which appellants could collect rents. In some cases when stays were lifted, appellants filed subsequent applications for bankruptcy on the same parcel. In every case after filing for bankruptcy, appellants took no further action on the petitions, as required to move the matters to discharge, and the petitions were dismissed by the bankruptcy court. Appellants applied none of the rent moneys to the deeds of trust encumbering the property.

The forgery and filing of false instruments charges were based on the forgery and filing of petitions for bankruptcy or grant deeds.

---

[1] All further statutory references are to the Civil Code unless otherwise specified.

## DISCUSSION

### A. *Constitutionality of Rent Skimming Statutes*

Appellants argue section 892, criminalizing rent skimming, is unconstitutional. They contend the section denies due process and equal protection, violates the supremacy clause of the federal Constitution and conflicts with California's constitutional prohibition against punishment for failure to pay a debt.

#### 1. *Background*

##### a. *Rent Skimming Statutes*

Sections 890, 892 and 893 define perhaps one of the most unique schemes of criminalization of which this court is aware.[2] Section 890, subdivision (a), defines "rent skimming" as "using revenue received from the rental of a parcel of residential real property at any time during the first year period

---

[2]It appears five other jurisdictions have similar laws directed at the same problem. In Colorado it is a felony to knowingly acquire an interest in real property which is encumbered by a loan secured by a mortgage or deed of trust when the loan is in arrears at the time the property is acquired or is placed in default within 18 months after the property is acquired and there is a failure to apply all the rent derived from that interest: first, toward the satisfaction of all outstanding payments due on the loan; and second, toward any fees due to any property owners association used for the upkeep of the facility. (Colo. Rev. Stat. § 18-5-802.)

In Florida it is a felony when, within a three-year period, with the intent to defraud, a purchase is made of two or more single, two-family, three-family or four-family dwellings that are subject to a loan that is in default at the time of the purchase or within one year after the purchase, which loan is secured by a mortgage or deed of trust, and there is a failure to make payments on the mortgage or deed or trust as they become due and the rents from such dwellings are applied to the purchaser's own use. (Fla. Stat. Ann. § 697.08.)

In Kansas it is a misdemeanor when, with the intent to defraud, a purchase is made of a one- to four-family dwelling, which is subject to a loan then in default or in default within a year of the purchase, secured by a mortgage, and there is a failure to deliver all rents to the holder of the mortgage and an application of those rents to the purchaser's own use. (Kan. Stat. Ann. § 21-4410.)

In Washington it is "equity skimming" when a person purchases a dwelling with the representation that person will assume the obligation to make the payments on an existing mortgage or deed of trust and then fails to make payments on the mortgage as they become due within two years after the purchase and diverts value from the property by applying rents for the person's own use. It is a felony to engage in such practice three or more times in a three-year period. (Wash. Rev. Code § 61.34.020.)

Federal law makes it a crime to, with the intent to defraud, willfully engage in a pattern or practice of purchasing a one- to four-family dwelling which is subject to a loan, secured by a mortgage or deed of trust held or insured by stated federal agencies, in default at the time of purchase or within a year of purchase and fails to make payments under the mortgage or deed of trust and applies the rents to his own use. Such act is not criminal if it occurs as to only one dwelling. (12 U.S.C. § 1709-2.)

after acquiring that property without first applying the revenue or an equivalent amount to the payments due on all mortgages and deeds of trust encumbering that property."

Section 890, subdivision (b), defines "multiple acts of rent skimming" as "knowingly and willfully rent skimming with respect to each of five or more parcels of residential real property acquired within any two-year period."

Section 891 defines civil rights and remedies for those victimized by rent skimming.

Section 892, subdivision (a), makes multiple acts of rent skimming punishable either as a felony or a misdemeanor.

Section 893, subdivision (a), creates affirmative defenses to civil and criminal actions brought under sections 891 and 892. It is a defense if rental revenue is used to make payments to health care providers for unforeseen and necessary medical treatment for the defendant, his or her spouse, parents or children. It is a defense that rental revenue was used to make payments to a licensed contractor or material supplier to correct violations of statutes, ordinances or regulations dealing with the habitability of the premises.

### b. *Legislative History*

The rent skimming sections of the Civil Code were created in 1986 by Senate Bill No. 1856. The Enrolled Bill Report from the Department of Consumer Affairs noted that rent skimming is a sophisticated form of fraud in which the rent skimmer purchases property, rents it to a tenant, collects a security deposit and rent but makes no mortgage, tax or insurance payments. The scheme continues until the original seller receives notice of a tax or judgment lien or the lender commences foreclosure proceedings. The report noted the existence of one such scheme involving property worth approximately $18 million. The report stated existing law did not prohibit rent skimming.

In his letter requesting the Governor sign the rent skimming legislation, Senator Seymour, author of the bill, described rent skimming as an "elaborate fraud" which victimizes sellers, lenders and tenants.

In his letter urging the Governor sign Senate Bill No. 1856, the Attorney General, who sponsored passage of the bill, described rent skimming schemes as fraudulent. The Attorney General, however, stated: "While rent skimming as described above might be covered by traditional theft and fraud

statutes, such convictions are difficult to obtain because conflicts between the parties' testimony and the written or oral representations originally made by the rent skimmer make it very difficult to prove, beyond a reasonable doubt, that the rent skimmer had the intent to defraud at the time the sale took place.

"Traditional civil foreclosure remedies are also inadequate for the seller, and the lender has no direct recourse whatsoever. Finally, tenants evicted from foreclosed premises are usually difficult to locate or have moved out of the area so that it is difficult to get ex-tenants as witnesses.

"SB 1856 will now make it a felony/misdemeanor to *knowingly and willfully* engage in the business of rent skimming, as defined. This is consistent with federal law, which makes rent skimming involving federally financed property a felony. (See 12 U.S.C. § 1709-2.)"

c. *Elements of Rent Skimming*

The elements of a criminal rent skimming are: (1) in a two-year period (2) the defendant must have knowingly and willfully (3) as to five parcels (4) of residential property (5) engaged in rent skimming. Rent skimming means (1) using revenue from the rental (2) of a parcel of residential real estate (3) at any time during the first year after acquiring that property (4) without first applying the revenue or an equivalent amount to the payments due on all mortgages and deeds of trust encumbering that property.

The acts which must be proved in showing a criminal rent skimming are easily discerned. The mental element is only slightly less clear. As noted, rent skimming is criminal when a person engages in "multiple acts of rent skimming." The required five acts of rent skimming must have been committed knowingly and willfully.

 The terms "knowingly" and "willfully" are defined in section 7 of the Penal Code. While the rent skimming legislation is contained in the Civil Code, Penal Code definitions are persuasive in determining the intent of the Legislature in using those terms. (*People* v. *Taylor* (1992) 7 Cal.App.4th 677, 692 [9 Cal.Rptr.2d 227].)

"The word 'willfully' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." (Pen. Code, § 7, subd. 1.)
 "[I]t is well settled that the terms 'willful' or 'willfully,' when applied

in a penal statute, require only that the illegal act or omission occur 'intentionally,' without regard to motive or ignorance of the act's prohibited character. [Citations.]" (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 396 [149 Cal.Rptr. 375, 584 P.2d 512].) Willfully implies no evil intent; " 'it implies that the person knows what he is doing, intends to do what he is doing and is a free agent.' [Citation.]" (*Castro* v. *Superior Court* (1970) 9 Cal.App.3d 675, 701-702 [88 Cal.Rptr. 500].)

"The word 'knowingly' imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such act or omission." (Pen. Code, § 7, subd. 5.)

■ The use of the words knowingly and willfully in a penal statute usually define a general criminal intent. (*People* v. *Dollar* (1991) 228 Cal.App.3d 1335, 1340 [279 Cal.Rptr. 502].) There can be specific intent crimes using the terms but the specific intent in those instances arises not from the words willfully or knowingly, but rather from the requirement in those offenses there be an intent to do a further act or achieve a future consequence. (See *People* v. *Stark* (1994) 26 Cal.App.4th 1179, 1182-1183 [31 Cal.Rptr.2d 887]; *People* v. *Dollar, supra*, 228 Cal.App.3d at pp. 1340-1342.)

■ The rent skimming sections contain no language requiring the defined acts be done with any fraudulent or larcenous intent, nor do the sections require the defendant intend any additional act or future consequence. The offense is thus one requiring general and not specific criminal intent.

Our conclusion in this regard is buttressed by the legislative intent indicating the crime of rent skimming was created in part to avoid the evidentiary and proof problems inherent in attempting to prosecute rent skimming activity under traditional theft and fraud statutes.

## 2. *Imprisonment for Debt*

■ Appellants argue the Civil Code's criminal rent skimming sections violate article I, section 10 of the California Constitution which states in part: "A person may not be imprisoned in a civil action for debt or tort." ■ Article I, section 10, replaced an earlier constitutional provision (Cal. Const. art. I, former § 15) which contained an exception for "cases of fraud." (See *In re Trombley* (1948) 31 Cal.2d 801, 804 [193 P.2d 734] (*Trombley*); *Central Delta Water Agency* v. *State Water Resources Control*

*Bd.* (1993) 17 Cal.App.4th 621, 639 [21 Cal.Rptr.2d 453].) The deletion of the exception had no substantive effect and cases interpreting the earlier version are authority for interpreting the present form of the prohibition. (*Central Delta Water Agency* v. *State Water Resources Control Bd.*, *supra*, 17 Cal.App.4th at p. 639.) Further, while article I, section 10, refers to "civil action for debt or tort," it is applicable to criminal statutes imposing imprisonment for debt. (*Trombley*, *supra*, 31 Cal.2d at p. 804.)

### a. *Cases*

Four cases define the analytical framework applicable to claimed violations of the prohibition against imprisonment for debt. In *Trombley*, the court reviewed the claim Labor Code section 216 violated the prohibition. That section makes it a misdemeanor for any person who "[h]aving the ability to pay, willfully refuses to pay wages due and payable after demand has been made." (Lab. Code, § 216, subd. (a).)

Citing the fraud exception to the imprisonment for debt prohibition, the court noted the prohibition was "adopted to protect the poor but honest debtor who is unable to pay his debts, and [was] not intended to shield a dishonest man who takes an unconscionable advantage of another. [Citations.]" (*Trombley*, *supra*, 31 Cal.2d at p. 809.) The court recognized that wages were not ordinary debts, that workers are particularly dependent on wages and that it was a matter of essential public policy that workers receive their pay when due. (*Ibid.*)

The court stated: "An employer who knows that wages are due, has the ability to pay them, and still refuses to pay them, acts against good morals and fair dealing, and necessarily intentionally does an act which prejudices the rights of his employee. Such conduct amounts to a 'case of fraud' within the meaning of the exception to the constitutional prohibition and may be punished by statute." (*Trombley*, *supra*, 31 Cal.2d at p. 810.)

*Trombley*'s formulation has been applied and expanded in three subsequent cases. In *People* v. *Howard* (1969) 70 Cal.2d 618 [75 Cal.Rptr. 761, 451 P.2d 401] (*Howard*), our Supreme Court concluded that Penal Code section 484b did not run afoul of the constitutional prohibition against imprisonment for debt. That section makes it a crime for "[a]ny person who receives money for the purpose of obtaining or paying for services, labor, material or equipment and willfully fails to apply such money for such purpose by either willfully failing to complete the improvements for which funds were provided or willfully failing to pay for services . . . provided incident to such construction, and wrongfully diverts the funds to a use other than that for which the funds were received." (Pen. Code, § 484b.)

*Howard* applied the *Trombley* rationale to section 484b even though the section dealt with a failure not only to pay wages but also to pay for materials and equipment. The court noted the section required a willful failure to complete improvements or willful failure to make the payments. The court stated: "[A] contractor guilty of such conduct has also acted against good morals and fair dealing, that his conduct has necessarily prejudiced the rights of homeowners and of those who may have provided financing, and that his acts likewise constitute a 'case of fraud' within the exception to the constitutional ban on imprisonment for debt." (*Howard, supra*, 70 Cal.2d at p. 623.)

In *People v. Neal C. Oester, Inc.* (1957) 154 Cal.App.2d Supp. 888 [316 P.2d 784] (*Oester*), the court dealt with provisions of the Unemployment Insurance Code requiring the withholding by employers of workers' contributions to the Unemployment Fund, holding the same in trust, and making it a crime for any employing unit to "knowingly" withhold the deductions required and "willfully" failing or being "financially unable" to pay such deductions. (*Id.* at p. Supp. 889.)

Against a claim the section violated the prohibition against imprisonment for debt, the court noted that insofar as criminal liability was dependent on the "willful" failure to pay, the section clearly comes within the fraud exception to the prohibition as interpreted in *Trombley*. The *Oester* court had more difficulty with the "unable to pay" alternative basis for liability.

The court noted if the words were read literally, the section allowed imprisonment for debt, since "[s]imple insolvency would be a crime." (*Oester, supra*, 154 Cal.App.2d at p. Supp. 892.) The court interpreted the word "willfully" in the criminal section to modify not only the failure to pay provision but the inability to pay provision as well. The court stated: "It appears to us that the Legislature intended by this section to punish the individual who willfully has divested himself of these withheld contributions. For example, he pays business creditors with them, gambles them away, conveys them to his wife in a property settlement agreement, and then comes to court and says, 'I am not willfully failing to pay these withheld deductions, I simply don't have them.' If he is willfully financially unable to pay them, he is guilty. If he is not willfully financially unable, but innocently so, then he is not guilty." (*Id.* at p. Supp. 892.)

In *People v. Singer* (1980) 115 Cal.App.3d Supp. 7 [171 Cal.Rptr. 587], the defendant was convicted of failure to withhold or pay over withheld taxes as required by Revenue and Taxation Code former section 19409. The defendant contended the section was void, arguing it imposed imprisonment

for debt. The section has no requirement of willfulness. Citing *Trombley* and *Oester*, the court read a willfulness requirement into the section and held that so interpreted the section came within the fraud exception to the prohibition against imprisonment for debt. (115 Cal.App.3d at p. Supp. 10.)

### b. *Discussion*

■ These cases suggest the fraud exception to the prohibition against imprisonment for debt is broad and includes any situation in which a person is able but does not make a payment required by law, that is, he willfully does not make the required payment. The rent skimming statutes make it a crime to willfully fail to apply revenues received from the rental of applicable residential property or an equivalent amount to the payment due on all mortgages and deeds of trust encumbering the property. Since the statutes only criminalize the willful diversion of specific funds actually in the possession of the defendant, they do not violate the constitutional prohibition against imprisonment for debt.

### 3. *Equal Protection*[3]

■ Appellants argue California's rent skimming statute violates the equal protection clauses of both the federal and state Constitutions. (U.S. Const., amend. XIV; Cal. Const., art. I, § 7, art. IV, § 16.) Specifically, they contend the sections arbitrarily separate out for criminal sanction a subclass of those who use rental income of property for purposes other than payment on mortgages and deeds of trust. Appellants contend the sections make several arbitrary distinctions defined by the type of property involved, i.e., residential, the number of instances of such activity, i.e., five or more, the frequency of such activity, i.e., five or more times within two years, and the temporal relationship between the acquisition of a piece of property and the diversion of rent, i.e., within one year.

■ While its precise meaning and application are not always clear, in general a denial of equal protection occurs when the state adopts a classification that affects similarly situated groups or individuals in an unequal manner. (*People* v. *Barrera* (1993) 14 Cal.App.4th 1555, 1565 [18 Cal.Rptr.2d 395].)

"Statutes challenged under the equal protection clause will receive differing levels of scrutiny depending upon the nature of the distinctions they

---

[3]Appellants suggest there is some denial of equal protection in the provision of section 891, subdivision (g), making Code of Civil Procedure sections 580a, 580b, 580d and 726 inapplicable to actions brought under the rent skimming legislation. Each of the Code of Civil Procedure sections deals with judgments in civil actions and has nothing to do with the criminal aspects of rent skimming.

establish. Legislation which creates a suspect classification or impinges on the exercise of a fundamental right is subject to strict scrutiny and will be upheld only if it is necessary to further a compelling state interest. All other legislation will satisfy constitutional requirements if it bears a rational relationship to a legitimate state purpose. [Citations.]" (*People* v. *Silva* (1994) 27 Cal.App.4th 1160, 1167 [33 Cal.Rptr.2d 181].)

In *People* v. *Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55, 551 P.2d 375], our Supreme Court held that liberty is a fundamental interest and that classifications dealing with it must satisfy the strict scrutiny test. In *Olivas* the court applied that test and found it was a denial of equal protection to charge, try and convict a juvenile offender in adult court and then, pursuant to Welfare and Institutions Code section 1731.5, commit that person to the Youth Authority for a longer term than for an adult convicted of the same offense but sentenced to prison.

While it may be that liberty is a fundamental interest, the application of that conclusion to the equal protection analysis of criminal statutes is not entirely clear. In *People* v. *Davis* (1979) 92 Cal.App.3d 250, 258 [154 Cal.Rptr. 817] (*Davis*), the court stated: "It appears, however, that the *Olivas* court did not want to increase substantially the degree of judicial supervision of the Legislature's criminal justice policies. Such a highly intrusive judicial reexamination of legislative classifications is not merited by a close reading of *Olivas*." The court concluded the *Olivas* opinion was intended to be a narrow one and stated that it did not require the courts to subject all criminal classifications to the strict scrutiny test. (*Ibid.*)

In *People* v. *Mitchell* (1994) 30 Cal.App.4th 783 [36 Cal.Rptr.2d 150] (*Mitchell*), the court considered whether equal protection was violated by the provisions of Health and Safety Code section 11370.6. That statute makes it a felony to possess money or negotiable instruments in excess of $100,000 obtained as the result of the unlawful sale, etc., of any listed controlled substance, with knowledge the money or instruments were so obtained or who possesses money or negotiable instruments in excess of $100,000 intended by that person for the unlawful purchase of listed controlled substances and commits an act in furtherance of the unlawful purchase.

The defendant in *Mitchell* argued the statute denies equal protection since it impermissibly creates two classes of individuals: those who possess $100,000 knowing it was obtained by a sale, etc., of a controlled substance, and those who possess less than $100,000 under the same circumstances. The statute makes the first class of individuals subject to criminal conviction and imprisonment and leaves the other class with no criminal liability whatsoever.

The court began its analysis by discussing which test, "strict scrutiny" or "rational basis," was applicable to the equal protection claim made. The *Mitchell* court noted the general pronouncement in *Olivas* that liberty was a fundamental interest requiring use of the strict scrutiny test but, citing *Davis*, made the point the *Olivas* decision was a narrow one not requiring that all criminal classifications meet the strict scrutiny test. The court noted it was unaware of any case striking down a statute on the basis that the Legislature lacked a compelling state interest in enacting it. (*Mitchell, supra*, 30 Cal.App.4th at pp. 794-795.)

Citing *People v. Gonzalez* (1978) 81 Cal.App.3d 274 [146 Cal.Rptr. 417], *People v. Hughes* (1980) 112 Cal.App.3d 452 [169 Cal.Rptr. 364], *People v. Peace* (1980) 107 Cal.App.3d 996 [166 Cal.Rptr. 202], and *People v. Thomas* (1974) 43 Cal.App.3d 862 [118 Cal.Rptr. 226], all cases which applied the rational basis test to statutes defining gradations of punishment, such as Penal Code section 12022.6, creating an enhancement when the loss of property in a crime exceeds certain monetary levels, the court stated: "Determining gradations of culpability includes setting the dividing line between legal and illegal conduct. It does not implicate the strict scrutiny test for equal protection purposes." (*Mitchell, supra*, 30 Cal.App.4th at pp. 795-796.) The court went on to hold that the monetary distinction used by Health and Safety Code section 11370.6 did not deny equal protection.

We find a lack of clarity and consistency in the cases dealing with the equal protection analysis of penal statutes. *Olivas* did not deal with a statute creating a crime but was concerned rather with a law which results in greater punishment for separate defendants convicted of the same crime in the same court based solely on the ages of the defendants. Still, *Olivas* states that liberty is a fundamental interest and requires that the strict scrutiny test be applied to equal protection claims when liberty is affected. Courts since *Olivas* have applied that concept narrowly, going so far that in *Mitchell* the court declined to apply the strict scrutiny test to a review of whether equal protection was denied by a statute that divided the criminal from the noncriminal solely on the basis, not of the conduct or mens rea of the defendant, but on the amount of money involved.[4]

The problem is with *Olivas* and its insufficiently confined or explained concept that liberty is a fundamental interest and that statutes affecting

---

[4]Other cases have interpreted *Olivas* less narrowly. In *People v. Gonzalez, supra*, 81 Cal.App.3d 274, the court faced an equal protection claim dealing with Penal Code section 286, subdivision (c), which prescribes more severe punishment for an act of sodomy when the victim is under 14 years of age and the defendant is more than 10 years older than the victim. Citing *Olivas*, the court stated the various classification of offenders and levels of punishment defined by Penal Code section 286 implicated liberty interests and it was necessary they withstand a strict scrutiny analysis. The court concluded the test was satisfied since there was a compelling interest in protecting children from sexual molestation by persons who were

liberty are subject to strict scrutiny. The difficulty is that read literally, the concept, as noted by *Davis*, intrudes too heavily on the police power and the Legislature's prerogative to set criminal justice policy. We join with those courts that have concluded this was not the intent of *Olivas* and that when a statute defines a crime and thereby separates the population into criminal and noncriminal classes, there is no denial of equal protection if the classification bears a rational relationship to a legitimate state purpose.

That being the case, it is perhaps better to view the problem as one involving not equal protection, but rather substantive due process. "In the exercise of its police power a Legislature does not violate due process so long as an enactment is procedurally fair and reasonably related to a proper legislative goal. The wisdom of the legislation is not at issue in analyzing its constitutionality, and neither the availability of less drastic remedial alternatives nor the legislative failure to solve all related ills at once will invalidate the statute." (*Hale* v. *Morgan supra*, 22 Cal.3d at p. 398.) We conclude California's rent skimming statutes satisfy this rational basis test with regard to its various classifications.

### a. *Residential Property*

First, there is no denial of equal protection or substantive due process in the criminalization of rent skimming involving residential property and the

---

materially more mature. The court stated it was more likely a child would succumb to the advances of one who is much older than to those of a person closer to the victim's age. The court stated classification based on the ages of the victim and offender was necessary to carry out the state's interest. The court then stated: "Once the strict scrutiny test is met as to justify a classification, the precise parameters drawn by the classification need only be rationally related to the interest protected. [Citation.] It is a legislative and not judicial function to draw statutory dividing lines where the classification is constitutionally permissible." (81 Cal.App.3d at pp. 277-278.)

In *People* v. *Hernandez* (1979) 100 Cal.App.3d 637 [160 Cal.Rptr. 607], the defendant argued the imposition of a one-year enhancement for a prior California prison term pursuant to Penal Code section 667.5, subdivision (b), denied him equal protection since the imposition of such an enhancement for a California prior required imprisonment for any period while an out-of-state prior required imprisonment for a year or more. The court rejected the argument using the rational basis test. In using that test, the court stated: "This does not imply that liberty is not a fundamental interest. [Citation.] We believe that there is a qualitative difference, however, between the initial interest one has in retaining his liberty prior to sentencing and the interest one has in whether or not an enhancement applies. The latter situation is more analogous to the case dealing with the different statutory treatment of good behavior participation credits [citation] and credit for time served in custody prior to the commencement of a prison term. [Citation.] In these cases the rational basis test was applied as the proper test. [Citations.] [Those cases], as well as the instant situation, concern the effects of certain legislative enactments upon an individual's underlying sentence and actual time served and not whether that person is to be deprived of his liberty in the first place." (100 Cal.App.3d at p. 644, fn. 2; *People* v. *Silva, supra*, 27 Cal.App.4th at pp. 1167-1168; *People* v. *Flores* (1986) 178 Cal.App.3d 74, 88 [223 Cal.Rptr. 465].)

noncriminalization of rent skimming involving nonresidential property. "The Legislature is not bound, in order to make its action valid, to extend its regulation to all cases which it might possibly reach, but may confine its restrictions to those classes of cases where the need is deemed to be clearest. [Citations.]" (*People* v. *International Steel Corp.* (1951) 102 Cal.App.2d Supp. 935, 941 [226 P.2d 587].) In the words of the Supreme Court in *Queenside Hills Co.* v. *Saxl* (1946) 328 U.S. 80, 84 [90 L.Ed. 1096, 1099, 66 S.Ct. 850]: "The Legislature is entitled to hit the evil that exists." (See also *People* v. *Edwards* (1991) 235 Cal.App.3d 1700, 1709 [1 Cal.Rptr.2d 631].)

The legislative history of the rent skimming statutes indicates their enactment was in response to the relatively widespread practice of persons taking title to multiple *residential* properties, renting them but not applying the rent to mortgages or deeds of trust encumbering the property. The problem, a serious one, that impacts individuals and financial institutions for whatever reason seems to involve residential and not other types of real property.

As noted the Legislature does not offend the equal protection or due process clauses when it confines criminalization to the actual problem identified even though in doing so it fails to criminalize similar behavior in other contexts that has not been demonstrated to be a problem of equal gravity. Indeed, to require the Legislature to deal not only with the actual evil identified but with other similar but potential evils is unwise. It may be that a similar problem in a different context would require a different approach, an approach that might not be evident until the potential evil clearly manifested itself.

Since the problem of rent skimming seems to be confined to residential property, the Legislature could, without offending concepts of equal protection criminalize such practice as to residential property even though rent skimming practices could be directed at other types of real property.[5]

### b. *Time Limitations*

Neither did the Legislature offend concepts of equal protection or substantive due process in criminalizing only multiple acts of rent skimming occurring within set time periods.

We begin by noting it is clear the legislative intent in criminalizing multiple acts of rent skimming was to deter and punish a destructive form of

---

[5]Cathleen notes no definition is provided for the term "residential property" and argues the term is ambiguous. Since there is no ambiguity about the nature of the property in this case, it is unnecessary we deal with the issue.

*fraud*, the nature of which, however, made the proof of fraud extremely difficult. The legislative response was simply to create a crime in which there was no need to prove a fraudulent intent.

The Legislature, in addressing a particular harmful practice can, in order to facilitate prosecution, and thus get at the harm perceived, properly cast the criminal net wider than the target behavior as long as the resulting offense comports with the requirements of substantive due process and equal protection. (See 1 LaFave & Scott, Substantive Criminal Law (1986) §§ 2.12(a)-(d), 2.13(d), pp. 209-221,231-232.)

While the use of rent from real property encumbered by a deed of trust for some purpose other than payment of the obligation due has not traditionally been treated as a crime, neither is it wholly "innocent" since an obligation exists to make the payment, the property generated income that could be applied to the obligation, and the failure to pay will do harm to others. We conclude no violation of substantive due process would occur in making it a crime not to pay the deed of trust obligation on a parcel of real property generating rent.[6]

The Legislature, however, did not make it a crime to rent skim with regard to a single parcel, rather it made it criminal to rent skim as to a given number of parcels in a relatively short time after acquiring the parcels. The question is whether while the Legislature could have criminalized a single rent skimming, it acted rationally in criminalizing only multiple acts committed in the time limits prescribed.

In *Mitchell*, *supra*, 30 Cal.App.4th at page 797, dealing with Health and Safety Code section 11370.6, making it a felony to possess money or negotiable instruments in excess of $100,000, knowing the money or instruments were obtained as the result of the unlawful sale of a controlled substance, etc., responded in the following way to a claim that the $100,000 threshold offended due process: "Of course the Legislature could have made possession of lesser amounts a misdemeanor, but its failure to adopt that

---

[6]In at least two other contexts the Legislature has made the nonfraudulent, nonlarcenous failure of a party to comply with a commercial or financial obligation a crime. It is a crime when, having the ability to pay, a person willfully refuses to pay wages due after a demand is made. (Lab. Code, § 216, subd. (a).) Penal Code section 484b makes it a crime for a person to receive money for the purpose of paying for services, labor, materials or equipment and willfully fail to apply such money for such purpose by willfully failing to complete the improvement for which the funds were given or willfully fails to pay for the services, etc., provided incident to such construction, and wrongfully diverts the funds to another use. If the amount diverted exceeds $1,000, the crime is a felony, if less, it is a misdemeanor. (See *Howard*, *supra*, 70 Cal.2d at pp. 621-626; *People* v. *Heitz* (1983) 145 Cal.App.3d Supp. 8, 14-16 [193 Cal.Rptr. 138].)

approach does not render the legislation unconstitutional. The statute is obviously aimed at large scale drug operations, so the Legislature rationally limited culpability to possessors of large amounts of cash. Although Mitchell correctly points out it is virtually impossible to show precisely what threshold would most effectively carry out the purpose of the law, such precision has never been required."

We conclude the same analysis applies here. While the Legislature might have criminalized a single failure to apply rent to the obligation under a deed of trust and thus, advance its intent of deterring the burgeoning problem of rent skimming, it could reasonably decide to criminalize only those situations where the frequency of the acts and their temporal relationship to the acquisition of the parcel was such that the harm done was greater and the possibility of a fraudulent intent more likely. We agree with *Mitchell* that it is impossible to precisely define what threshold would effectively carry out the purpose of the law; no such precision is required. We conclude the frequency and time elements of the rent skimming law do not deny due process or equal protection.

### 4. *Violation of the Supremacy Clause*

■ Appellants argue application to them of California's criminal rent skimming statutes violates the supremacy clause of the United States Constitution. (U.S. Const., art. VI.)

Appellants' rent skimming scheme involved taking grant deeds on property that was in or about to go into foreclosure and then filing petitions for bankruptcy listing the property as an asset of the entity or individual seeking bankruptcy protection. The bankruptcy petition put in place an immediate stay on foreclosure and, thus, extended the period in which appellants could collect rent on the subject property. In no case did appellants take action to complete the bankruptcy process and none of the petitions resulted in a discharge. The petitions were summarily dismissed by the bankruptcy court which, in some cases, merely led to appellants' filing new petitions for bankruptcy involving the same parcel.

Appellants argue the placing of the subject real estate within the jurisdiction of the bankruptcy court constituted a bar to the instant action under California's rent skimming statute. Appellants essentially argue both bankruptcy law and California's Rent Skimming Act deal with debt. Once a bankruptcy petition was filed with regard to an acquired parcel of property, any failure to make payments on a deed of trust encumbering that property could not be used as the basis for satisfying the elements of a criminal rent

skimming since to do so would conflict with the goals and objectives of the Bankruptcy Act. Thus, prosecuting appellants in this case violated the supremacy clause of the United States Constitution. (See *People* v. *Goebel* (1987) 195 Cal.App.3d 418, 421-422 [238 Cal.Rptr. 242].)

Whatever the theoretical merits of appellants' claim, it avails them nothing in this case. The criminal rent skimming law could only conflict with the goals and objectives of the Bankruptcy Act if appellants filed the petitions to, in good faith, seek protection from creditors and allow a fresh start unencumbered by preexisting debt. (*People* v. *Goebel, supra,* 195 Cal.App.3d at pp. 421-422.) Appellants filed repeated bankruptcy petitions but in no case pursued the process to discharge; indeed, they took no action beyond the mere filing of the petition. In every case the petitions were dismissed. In some cases the dismissal simply resulted in appellants filing additional bankruptcy petitions as to the same parcel of property.

Appellants' pattern of behavior makes clear they were not legitimately seeking the protection of the bankruptcy system, but rather were using the system as a clever component of a rent skimming scheme. Since it is not a goal or objective of the bankruptcy law to protect such behavior, there is no conflict in this case between the Bankruptcy Act and California's criminal rent skimming law.

### B. *Instruction on the Mental Elements of Rent Skimming*

Appellants argue the trial court erred in failing to instruct that an intent to defraud or a willful refusal to pay are elements of the offense of rent skimming.

Appellants note the jury was instructed as follows: "Every person who knowingly and willfully uses revenue received from the rental of a parcel of residential real property at any time during the first year period after acquiring that property, without first applying the revenue or an equivalent amount to the payments due on all mortgages and deeds of trust encumbering that property is guilty of a violation of Civil Code 890/892, rent skimming."

Appellants further note the trial court gave CALJIC No. 1.20, defining "willfully" as merely a purpose or willingness to commit the act and does not require an intent to violate the law or to injure another or to acquire any advantage, and CALJIC No. 1.21, defining "knowingly" merely as knowledge of the existence of the facts in question and did not require knowledge of the unlawfulness of any act. The trial court specifically instructed that rent skimming was a general intent crime.

Appellants' argument assumes that to make the crime of rent skimming constitutional, an intent to defraud or a willful refusal to pay are necessary elements of the offense. As explained above, the rent skimming statutes define a general intent crime, requiring only that the acts be committed willfully and knowingly and not requiring an intent to defraud. The instructions make clear the diversion of rental revenue must be willful. The instruction is an adequate statement of the law and if appellants wished amplification of the instruction, they were required to so request. (See *People* v. *Trapps* (1984) 158 Cal.App.3d 265, 269 [204 Cal.Rptr. 541].)

## C. *Search Warrants*

Six search warrants were issued and executed in this case, five in California for appellants' bank records and one in Arizona for their residence. As to the California warrants, appellants argue California law requires a search warrant be sought only by a peace officer and notes the person who sought the warrant in this case and whose affidavit was given in support of the warrant was an "investigative specialist," not a peace officer. In any case, appellants argue the failure of the affiant to reveal she was not a peace officer was an intentional, material omission which undercuts the reliability of the affidavit and requires the suppression of the evidence seized under the authority of the warrants.

Appellants argue the Arizona search warrant was defective since while the affidavit clearly described the residence to be searched and outlined the facts making a search of appellants' residence reasonable, it contained no information indicating the described residence was appellants'.

### 1. *Nonpeace Officer Affiants/Misleading Affidavit*

 The five California search warrants were issued based on the affidavits of Patricia Belt. In the affidavits Belt stated she was an "investigative specialist" in the San Diego County District Attorney's Office and had held that position for six years. She stated she was assigned to the fraud division and her duties included the investigation of thefts and thefts by false pretenses. Belt's affidavit related interviews with persons who granted their real property to Robert and those who rented the properties and discussed evidence showing his failure or indications of his failure to make payments on the deeds of trust encumbering those properties. Belt is not a peace officer.

Appellants readily agree Penal Code section 1526, subdivision (a), states: "The magistrate, before issuing the warrant, may examine on oath the *person* seeking the warrant and any witnesses the person may produce," (italics

added) and that no section of the code requires the person seeking a search warrant be a peace officer. Appellants note, however, that Penal Code section 1523 defines a search warrant as "an order in writing, in the name of the people, signed by a magistrate, directed to a peace officer, commanding him to search for personal property." Appellants further note other sections of the code dealing with the execution of the warrant all mention peace officers or officers and make no reference to unsworn persons. (Pen. Code, §§ 1528, subd. (a), 1530, 1535.)

Appellants contend these references to peace officers evidence an intent not only that officers must execute warrants, but that only they may seek them. We have found no case suggesting such an intent. While the reasons for requiring a search warrant only be served by a peace officer are obvious, there seems no reason why seeking one should be confined to peace officers instead of unsworn members of law enforcement. Seemingly the person who seeks the warrant or provides their affidavit should be the person with most direct knowledge of the facts supporting probable cause. We see no reason why a deputy district attorney or an unsworn investigator for a police department, for example, cannot seek a search warrant.

Neither do we conclude Belt made a deliberately false or misleading statement when she stated in the affidavit she was an "investigative specialist." (See *People* v. *Box* (1993) 14 Cal.App.4th 177, 183 [17 Cal.Rptr.2d 504].) Belt was, in fact, an investigative specialist with the district attorney's office. She stated in her affidavit she had held that position for six years and that she worked in the fraud division. The affidavit reveals no attempt by Belt to cloak herself with any false expertise, status or experience. In any case her affidavit was a fact-centered one; while she opined Robert's pattern of activity suggested a rent skimming operation, that conclusion was readily reached from the facts present and did not rely ultimately on any claim of special expertise by Belt.

### 2. *Arizona Warrant*

Appellants argue the Arizona warrant was not supported by probable cause. Appellants note while the affidavit supporting the warrant provided a detailed description of the residence to be searched (including photographs), and while it gave a detailed description of Robert's rent skimming activities, it did not provide facts linking the described premises to Robert. Indeed, while between the lines the affidavit makes clear the officers believed the residence was that of the Bells, which it was, it did not directly assert the premises was theirs or provide facts supporting such conclusion.

Strictly speaking, the affidavit did not provide probable cause to search the described premises. The only basis for searching the house was its link to the Bells. Since the affidavit provided no facts from which a magistrate could conclude a link between the house and the Bells, it could not support the issuance of the warrant.

The exclusionary rule is designed to deter police misconduct, not judicial error. No rule of exclusion applies when evidence is obtained in objectively reasonable reliance on a defective search warrant. Nothing is gained by penalizing the officer for a judicial error in issuing the warrant. (*People* v. *Smith* (1995) 31 Cal.App.4th 1185, 1191-1192 [37 Cal.Rptr.2d 524].)

The fact a neutral magistrate has issued a search warrant generally is enough to establish the good faith of officers who rely on it. There are, however, exceptions. The exception arguably relevant in this case is when "the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (*People* v. *Ruiz* (1990) 217 Cal.App.3d 574, 581 [265 Cal.Rptr. 886].)

Clearly in this case both the Arizona officer and the Arizona magistrate erred. In its response to the motion to suppress, the People made an offer of proof that if the Arizona officer were called, he could state he determined the subject residence was the Bells by running a utilities check on the premises. The officer could testify he simply inadvertently omitted that fact from the affidavit. The officer did not testify at the Penal Code section 1538.5 hearing.

No one suggests the subject residence was not the Bells' home. Neither is there anything to suggest the fact of their residence was either a secret or not readily determinable. The tone of the affidavit clearly indicated the officer's conclusion the subject residence was the Bells' home. While linking the Bells to the location to be searched is obviously not a mere technicality, it is, in most cases of this nature, a routine matter. We note that the most obvious and routine things are those easiest to forget and their absence least noticeable. The affidavit was complete in every other respect. We simply cannot say, given the nature of the omission made, that the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

We conclude the officers reasonably relied on the Arizona warrant.

D. *Instructions on Aiding and Abetting*

Cathleen argues the jury was misinstructed concerning the concept of aiding and abetting. She acknowledges the jury was instructed concerning

aiding and abetting in the terms of CALJIC No. 3.01 and concedes the instruction is adequate in the usual case to inform the jury of the elements of that theory of culpability. Cathleen notes, however, the criminalizing language of section 892, subdivision (a), refers to any "person" who engages in multiple acts of rent skimming, and that section 890, subdivision (c), defines "person" as "any natural person, any form of business organization, its officers and directors, and any natural person who authorizes rent skimming or who, being in a position of control, fails to prevent another from rent skimming." She seems to suggest this expansive definition of "person" was meant to replace the usual concept of aiding and abetting with one designed particularly for the crime of rent skimming.

Cathleen cites no authority for this assertion and provides no reason why the Legislature would have done such a remarkable thing. She recognizes the section's expansive definition of "person" was designed to deal with a type of crime that is often accomplished by the use of complex business organizations and to make the liability of directors and officers clear. However, there is nothing in the law suggesting that one who aids or abets a rent skimming, as the concept is defined in CALJIC No. 3.01, is excused from culpability simply because he or she does not come within the definition of "person" as defined in section 890, subdivision (c).

### E. *Statute of Limitations*

The Bells argue all rent skimming and some of the forgery and filing false instrument charges were barred by the statute of limitations.

#### 1. *Rent Skimming*

No claim was made below that prosecution of the rent skimming charges was barred by the statute of limitations. In California criminal statutes of limitation are jurisdictional and a failure to raise the issue at trial is not a waiver. (*People* v. *Ognibene* (1993) 12 Cal.App.4th 1286, 1288 [16 Cal.Rptr.2d 96].)

As noted section 892, subdivision (a), makes it a crime to commit five acts of rent skimming in a two-year period. Once a defendant is found guilty of those five acts, the section allows separate conviction and punishment for each additional act of rent skimming. Section 892, subdivision (b), states that if a defendant has been previously convicted of a violation of subdivision (a), then any subsequent act of rent skimming is a crime.

Section 892 has its own statute of limitations, presumably applicable to the crimes and prosecutions defined in both subdivisions (a) and (b), which states: "A prosecution for a violation of this section shall be commenced

within three years after the date of the acquisition of the last parcel of property that was the subject of the conduct for which the defendant is prosecuted." (§ 892, subd. (c).)

What does section 892, subdivision (c), mean when it says the prosecution must be commenced within "three years after the date of the acquisition of the last parcel of property that was the subject of the conduct for which the defendant is prosecuted"? The difficulty is that section 892, subdivisions (a) and (b), define three types of conduct: 1. five acts of rent skimming committed in a two-year period and constituting a single criminal act within the meaning of section 892, subdivision (a); 2. additional acts of rent skimming each constituting separately punishable criminal offenses and charged in the same prosecution as the initial five; and 3. individual acts of rent skimming committed after a conviction for rent skimming.

Insofar as section 892, subdivisions (a) and (b), make individual acts of rent skimming separate crimes, the "date of the acquisition of the last parcel of property that was the subject of the conduct for which the defendant is prosecuted" is, simply, the date of the acquisition of the parcel that is the subject of that individual act of rent skimming. In that context the words "last parcel of property that was the subject of the conduct" are essentially unnecessary.

The words, however, are necessary when the statute of limitations is applied to the five acts of rent skimming occurring in the two-year period necessary for the predicate criminal act defined in section 892, subdivision (a). Since there may be multiple acquisition dates, it is necessary to define the date from which the statute of limitations begins to run.

When this interpretation is applied to the facts of the present case, a further analysis is required. The parties agree prosecution commenced on June 4, 1992, when a bench warrant was issued for Robert's arrest on charges of rent skimming. (See Pen. Code, § 804.) Therefore, "the last parcel of property that was the subject of the conduct for which [appellants were] prosecuted" had to be acquired after June 4, 1989.[7] The last acquisition of a parcel of property which supported a charge of rent skimming was on October 1, 1989 (count 12). The acquisitions of the parcels supporting the rent skimming allegations in counts 2 through 7 and 9 through 11, all

---

[7]Cathleen makes no independent statute of limitations argument and merely joins in those advanced by Robert. The statute of limitations analysis offered by Robert and the Attorney General is premised on the prosecution commencing on June 4, 1992, when a bench warrant was issued for Robert's arrest. Cathleen does not suggest any other date that would change the analysis applicable to her.

occurred more than three years before the commencement of prosecution but within two years of the acquisition of the last parcel (count 12).[8]

Because four acts of rent skimming occurred within two years of count 12, the statute of limitations, as to the predicate five acts of rent skimming offense, was satisfied since prosecution commenced within three years of the acquisition of the last parcel that was the subject of the conduct for which appellants were prosecuted.

But what about the five additional counts of rent skimming as to Robert and the three additional counts as to Cathleen, which came within two years of the acquisition of the parcel which was the subject of count 12 but more than three years before the commencement of prosecution? If the "conduct for which [appellants were prosecuted]" is taken to mean the flurry of rent skimmings occurring within two years of the acquisition of the parcel that was the basis of count 12, then arguably those additional acts are fungible parts of the prosecuted conduct and not time barred.

Alternatively, it is not unreasonable to read the sections to mean that the predicate act of rent skimming, that is, the five acts in two years that renders the behavior criminal, is conduct for which appellants were prosecuted and the other acts in that two-year period are "additional acts" that are themselves "conduct for which the [appellants were] prosecuted." That being the case, each of those additional acts of rent skimming must have occurred within three years of the commencement of prosecution or they are time barred.

In short, as to additional acts of rent skimming occurring within two years of the acquisition of the last parcel that serves as the basis for the predicate five acts of rent skimming but more than three years before the commencement of prosecution, section 892, subdivision (c), is ambiguous. Since we find nothing in the legislative history of the section that resolves the ambiguity and since the ambiguity cannot otherwise be convincingly resolved, we interpret the legislation in the manner most beneficial to the defendants. (*People* v. *Martinez* (1993) 13 Cal.App.4th 23, 29 [16 Cal.Rptr.2d 556].)

Robert and Cathleen, therefore, are guilty of and can be punished for only one act of criminal rent skimming based on the act of rent skimming in count 12 and any four other acts of rent skimming found to have occurred within two years of count 12. For clarity we treat the verdicts in counts 7, 9, 10 and

[8]The acquisition of the parcel supporting the rent skimming allegation in count 1 occurred more than three years before the commencement of prosecution and more than two years before the acquisition of the parcel supporting the rent skimming allegation in count 12.

11 as true findings of four additional acts of rent skimming coming within the required two years of count 12.[9] Appellants are guilty of a single act of rent skimming based on the findings in counts 7, 9, 10, 11 and 12; all other convictions for rent skimming are reversed.[10]

### 2. *Filing of False or Forged Documents*

 Robert was charged with multiple counts of filing false or forged documents (Pen. Code, § 115, subd. (a).) He argues the statue of limitations for that offense is three years. (Pen. Code, § 801.) Prosecution for those charges commenced on April 20, 1993, with the filing of the amended information containing the false filing counts. Eight of the counts, however, indicate dates of commission more than three years before the filing of the information. Appellant argues these counts were time barred.

The People reply the statute of limitations affecting Penal Code section 115, subdivision (a), is subject to the tolling provisions of Penal Code section 803, subdivision (c). That section states with regard to offenses, a material element of which is fraud or breach of a fiduciary obligation or the basis of which is misconduct in public office, the time limitation does not commence to run until the offense is discovered. The section provides a noninclusive list of examples of the applicable sections of the Penal Code and other codes, including: "(1) Grand theft of any type, forgery, falsification of public records." (Pen. Code, § 803, subd. (c)(1).) As to each of the false filing counts, the People alleged and the jury found that the offense was not discovered until September and October 1992.

The People concede the offense of false filings is not specifically included in the listed offenses in Penal Code section 803, subdivision (c). The People

---

[9]In so doing we take no position on the manner in which the prosecution charged the rent skimming counts in this case.

[10]The People seem to suggest the fact the subject properties in counts 1 and 12 were acquired more than two years apart is irrelevant. They appear to argue that since section 892, subdivision (a), makes "additional acts" of rent skimming, beyond the required five, separately punishable so that once a defendant is subject to criminal prosecution for rent skimming, any act of rent skimming, however distant in the past, is also subject to prosecution. We disagree. Were we to read the section to mean that if at any time in the past a defendant had in a two-year period engaged in five acts of rent skimming he would be criminally liable not only for those acts but also for any other acts of rent skimming occurring at any time before or after, a serious due process problem would arise. Such an application of the statute of limitations would not simply make criminal liability for any individual act of rent skimming essentially without a statute of limitations, it would, more importantly, create a situation where a noncriminal act occurring years before could be rendered criminal and prosecutable by subsequent conduct. While making a series of acts of rent skimming in a relatively short period of time a crime might not be unreasonable, reaching back, perhaps decades, to make criminal a single act of rent skimming that was at the time not criminal would be fundamentally unfair.

note, however, that Penal Code section 132 is listed in section 803, subdivision (c)(2), and argue that section is a "near mirror image" of section 115. They contend, therefore, Penal Code section 115 should, by a parity of reasoning, also be included in Penal Code section 803, subdivision (c).

Section 132 is part of title seven, part six of the Penal Code dealing with the falsification and spoliation of evidence. The section makes it a felony to knowingly offer in evidence as genuine any document or written instrument knowing it is forged or fraudulent. The intent to defraud is neither an element of Penal Code section 115 nor Penal Code section 132. (*People* v. *Gangemi* (1993) 13 Cal.App.4th 1790, 1795-1796 [17 Cal.Rptr.2d 462]; *People* v. *Geibel* (1949) 93 Cal.App.2d 147, 168 [208 P.2d 743], *People* v. *Horowitz* (1945) 70 Cal.App.2d 675, 702 [161 P.2d 833].)

The core purpose of Penal Code section 115 is to protect the integrity and reliability of public records. Given that purpose and the scope of Penal Code section 803, we conclude the running of the statute of limitations as to section 115 is tolled until the discovery of the crime.[11]

### 3. *Forgery*

Robert makes two arguments related to the statute of limitations applicable to the forgery counts. First, he argues the jury was misinstructed concerning the statute of limitations, and second, that the evidence was insufficient to support the conclusion that counts 13, 15, 18, 20, 22 and 25 came within the statute of limitations. Since we have, contrary to the position taken by Robert, concluded the false filing counts have a statute of limitations running from the discovery of the offense, we conclude he would make the same arguments as to false filing counts 14, 16, 17, 19, 21, 23, 24 and 26 as well.

### a. *Law*

The statute of limitations for forgery and filing a false document is three years. (Pen. Code, § 801.) Both, however, come within the tolling provisions of Penal Code section 803, subdivision (c), and the time limitation does not begin to run until the discovery of the offense. For the purpose of the subdivision, an offense is discovered when either the victim or law enforcement learns of facts which, when investigated with reasonable diligence, would make the person aware a crime had occurred. (*People* v. *Kronemyer* (1987) 189 Cal.App.3d 314, 330-331 [234 Cal.Rptr. 442].) In other words, " 'The statute commences to run . . . after one has knowledge

---

[11]Our Supreme Court in *People* v. *Garfield* (1985) 40 Cal.3d 192, 199, footnote 7 [219 Cal.Rptr. 196, 707 P.2d 258], observed it might be the case that Penal Code section 803, subdivision (c), might be applicable to Penal Code section 115 but did not decide the issue.

of facts sufficient to make a reasonably prudent person suspicious of fraud [in this case forgery and filing a false document], thus putting him on inquiry.' " (*People* v. *Zamora* (1976) 18 Cal.3d 538, 562 [134 Cal.Rptr. 784, 557 P.2d 75], quoting *Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 437 [159 P.2d 958].) The identity of the perpetrator is not a fact relevant to the discovery issue. The issue is the discovery of the crime, not the criminal. (*People* v. *Crossman* (1989) 210 Cal.App.3d 476, 483 [258 Cal.Rptr. 370].)

### b. *Background*

In the information each count of forgery and false filing that had a potential statute of limitations problem carried this additional allegation: "It is further alleged that the above violation was not discovered until September and October 1992 by SANDRA HOMEWOOD [a prosecution documents examiner], and that no victim of said violation and no law enforcement agency chargeable with the investigation and prosecution of said violation had actual and constructive knowledge of said violation prior to said date because handwriting exemplars of the defendants were not available until July 1992, within the meaning of Penal Code section 803(c)."[12]

Robert filed a Penal Code section 995 motion, claiming that many of the forgery and false filing counts were time barred. It appears the People were relying on the date of June 21, 1990, as the date they first became aware of Robert's rent skimming scheme. The defense noted the issue was not when the prosecution became aware of his activities but when the victims could reasonably have discovered them.

The People argued that since the bankruptcies were filed under false names, the prosecution did not discover the forgery and false filing crimes until they were able to get writing samples from Robert after his arrest and compare them to the forged documents. The prosecutor stated that until that time she did not know if Robert or another person had forged the individual documents. The prosecutor told the trial court that when her investigation began, she discovered the bankruptcy filings that were the basis for the forgery and false filing counts but was confused about them and at least could not link them with certainty to Robert.

The trial court denied the Penal Code section 995 motion.

At the conclusion of trial the court instructed the jury with a version of CALJIC No. 4.74 concerning the statute of limitations. The jury was told the

---

[12]Such an allegation concerning the statute of limitations is required by *People* v. *Zamora*, *supra*, 18 Cal.3d at page 564, footnote 26.

action was commenced on June 4, 1992. The court instructed Robert could only be convicted of the charges in counts 13 through 22, the forgeries and false filing alleged to have occurred more than three years before June 4, 1992, if those crimes were discovered within three years of the commencement of the action. The jury was told, however, that if it found that "in the exercise of reasonable diligence on the part of criminal law enforcement authorities, those crimes should have been discovered at a time more than 3 years before the commencement of the action," the defendant could not be convicted of those counts. No mention was made concerning the effect on the running of the statute of any discovery of the crime by the victims.

Robert made no objection to the instruction and did not ask it be modified.

In her argument, the prosecutor argued solely concerning the discovery of the forgeries and false filing by law enforcement and made no mention of the possibility of their discovery by victims.

Robert made no argument concerning the statute of limitations.

As to each count of forgery or false filing with a potential statute of limitations problem, the jury made the following required special finding: "And we further find that the allegation that the above violation was not discovered until September and October 1992 by SANDRA HOMEWOOD, and that no victim of said violation and no law enforcement agency chargeable with the investigation and prosecution of said violation had actual and constructive knowledge of said violation prior to said date because handwriting exemplars of the defendants were not available until July 1992, within the meaning of Penal Code section 803(c) to be true."

c. *Discussion*

 We conclude the trial court prejudicially erred in the manner it instructed the jury concerning the statute of limitations. Before explaining that error, it is necessary we first discuss the counts to which the error applies.

A complaint was filed and an arrest warrant issued as to the rent skimming offenses on June 4, 1992. No charges were made with regard to the forgery or false filing offenses until the filing of the first amended information on April 20, 1993.

As noted, a prosecution of a forgery or a false filing must be commenced within three years of the reasonable discovery of the offense. A prosecution commences with the issuance of an arrest warrant for that offense. (Pen. Code, § 804, subd. (c).) On its face this might suggest the prosecution as to

the rent skimming offenses commenced with filing of the complaint and issuance of an arrest warrant on June 4, 1992, while the prosecution for the forgery and false filing offenses commenced with filing of the first amended information on April 20, 1993. In fact by operation of law, prosecution of both the rent skimming and the forgery and false filing offenses is deemed to have commenced with the issuance of the arrest warrant for the rent skimming offenses.

Penal Code section 803, subdivision (b), states: "No time during which prosecution of the same person for the same conduct, is pending in a court of this state is a part of the limitation of time prescribed in this chapter." The Law Revision Commission comment to section 803 states: "The test of the 'same conduct,' involving as it does some flexibility of definition, states a principle that should meet the reasonable needs of prosecution, while affording the defendant fair protection against an enlargement of the charges after running of the statute." (Cal. Law Revision Com. com., Deering's Ann. Pen. Code, § 803 (1996 pocket supp.) p 187.)

In *People* v. *Whitfield* (1993) 19 Cal.App.4th 1652, 1658-1660 [24 Cal.Rptr.2d 210], the defendant was charged with rape and other sexual offenses as to two victims. His defense was that his victims were prostitutes who engaged in consensual intercourse in exchange for drugs. Defendant sought a lesser related offense instruction on the crime of soliciting prostitution. The trial court rejected the request on the basis the statute of limitation on the prostitution offense had run. The Court of Appeal reversed, finding that soliciting prostitution is a lesser related offense of rape and that since the rape and the soliciting offenses were prosecutions for the "same conduct," the filing of the rape charges tolled the running of the statute as to the soliciting offense. (*Ibid.*)

In the present case the forgery and false filings were merely aspects of Robert's rent skimming scheme. We conclude, therefore, both offenses arose from the same conduct and the running of the statute of limitations as to the forgery and false filing offense was tolled by the issuance of the arrest warrant for the rent skimming offenses. Therefore, any forgery or false filing occurring after June 4, 1989, no matter the date of its discovery, was within the statute of limitations. Thus, any error with regard to instructions concerning the date of discovery aspects of the statute of limitations apply only to counts 13 through 21.

As noted we have concluded the trial court erred in the manner in which it instructed the jury concerning the discovery element of the statute of limitations. The trial court instructed that Robert could not be convicted of the applicable forgery and false filing counts if the jury found that in the

exercise of reasonable diligence "criminal law enforcement authorities" could have discovered the crimes more than three years before the commencement of the action.

The error was that the instruction did not inform the jury that if it found a *victim* could have reasonably discovered the crimes more than three years before the commencement of the action, it could not convict the defendant of that offense. The question which remains is whether the error was prejudicial.

What standard of prejudice applies? The People argue the test is that defined in *Watson,*[13] while appellant contends the error is one affecting the structural integrity of the process and requires per se reversal.

The question is a complex one. No case apparently has dealt with the question of what test of prejudice should be applied to errors in jury instructions concerning the "elements" of the statute of limitations.

Since in criminal cases in California the statute of limitations is considered "jurisdictional," courts have treated it either as an element of the offense or as a factor that is equivalent to an element of the offense. In *People* v. *Witt* (1975) 53 Cal.App.3d 154, 162 [125 Cal.Rptr. 653], the court stated: "In the field of criminal law a statute of limitations is jurisdictional in nature. It is an essential element of the offense charged, to be proven by the prosecution, and the defense is not waived by defendant's failure to raise it."

Whatever the proper academic characterization of the statute of limitations, a failure to prove that an offense comes within the limitation period results in a verdict of not guilty. The situation is, thus, different from that in *People* v. *Wims* (1995) 10 Cal.4th 293, 303-314 [41 Cal.Rptr.2d 241, 895 P.2d 77], in which the court found no federal constitutional issue where the instructional error merely involved the elements of a sentence enhancing allegation.

This state has determined that before appellants could be convicted of the charged offenses, a jury must determine that the prosecution came within the limitation period. That proof need only be by a preponderance of the evidence does not detract from the essential nature of the finding on the issue of guilt. We conclude a denial of federal due process occurs when a trial court, as in the present case, fails to instruct on an element of the statute of limitations just as it occurs when the court fails to instruct on an element of the crime itself. (See *People* v. *Kobrin* (1995) 11 Cal.4th 416, 426-430 [45 Cal.Rptr.2d 895, 903 P.2d 1027]; *People* v. *Odle* (1988) 45 Cal.3d 386,

---

[13]*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].

410-416 [247 Cal.Rptr. 137, 754 P.2d 184]; *People* v. *Avila* (1995) 35 Cal.App.4th 642, 651-662 [41 Cal.Rptr.2d 484].)

 In general, errors of federal constitutional dimension are tested by the harmless error standard defined in *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1005], that is, an error is prejudicial unless the reviewing court determines beyond a reasonable doubt that it had no effect on the verdict. In rare situations, however, where the error infects the "structural integrity" of the trial process, per se reversal is required. (*People* v. *Kobrin, supra,* 11 Cal.4th at pp. 428-430.)

Whether the failure to instruct concerning the element of an offense is an error affecting the structural integrity of the process is an unresolved issue. In *People* v. *Kobrin, supra,* 11 Cal.4th at pages 428-430, our Supreme Court stated both it and the United States Supreme Court had "strongly implied" that the failure to instruct concerning an element of an offense is a structural error that requires per se reversal.

 In *People* v. *Avila, supra,* 35 Cal.App.4th at pages 651-662, the court extensively reviewed the question of the test of harmless error applicable to the failure to instruct on the elements of an offense. The court, citing *People* v. *Cummings* (1993) 4 Cal.4th 1233, 1312-1315 [18 Cal.Rptr.2d 796, 850 P.2d 1], concluded when the instructional error removed substantially all the elements of the offense from consideration of the jury, the error required per se reversal. The court concluded, however, this was not necessarily the case where the failure to instruct concerned a single element.[14]

It is unnecessary we resolve the issue, since applying the *Chapman* test we find the error prejudicial. We first reject the People's argument that any omission in the instruction with reference to victims as discoverers was harmless since the findings the jury returned as to the relevant forgery and false filing count stated that neither a *victim* nor law enforcement could have discovered the crimes more than three years before the commencement of the prosecution. The difficulty is that not only did the court's instruction refer only to discovery by law enforcement, the prosecutor's argument dealt

---

[14]The People cite three cases it believes support its position that the proper test of prejudice is that defined in *Watson, supra,* 46 Cal.2d 818. (See *People* v. *Guiterrez* (1991) 232 Cal.App.3d 1624, 1641-1642 [284 Cal.Rptr. 230]; *People* v. *Lewis* (1986) 180 Cal.App.3d 816, 821 [225 Cal.Rptr. 782]; *People* v. *Posten* (1980) 108 Cal.App.3d 633, 648-649 [166 Cal.Rptr. 661].) Each of those cases dealt with a situation involving undisputed evidence that as a matter of law the limitation period had not run. This is not the case here and the cases are not authority for the proposition that the proper test of prejudice on the omission of an instruction concerning an element of the statute of limitations is *Watson*.

only with the time law enforcement could reasonably have discovered the offenses, clearly signaling to the jury that was the sole issue to be decided. Indeed, the language of the form on which the jury was to return its finding concerning reasonable discovery clearly suggested the sole issue was the discovery of the crimes by law enforcement.

We cannot say beyond a reasonable doubt that the omission in the instruction was harmless. The filing of forged petitions in bankruptcy played an important part in Robert's rent skimming scheme. The lending institutions which were victims of that scheme have great sophistication in the area of real estate and deeds of trust and the laws directly and indirectly related to those areas. The practice of rent skimming is such a problem the state felt it necessary to create specific civil and criminal legislation related to the practice. It is reasonable to believe a lending institution would be sensitive to the practice and aware of conditions that might indicate rent skimming was occurring as to a particular parcel of property. The bankruptcy filings by entities other than the named mortgagee, the fact no attempt was made to move the bankruptcy to discharge and the fact that at least as to some of the parcels bankruptcy petitions were filed seriatim, all arguably placed the lending institutions on notice that a rent skimming operation was going on with forged and false bankruptcy filings playing a part in the scheme. It is not unreasonable to believe a jury would have concluded the victims were on notice in counts 13 through 21 that a crime had been committed and that the statute of limitations began to run before the discovery of the crimes by law enforcement. Counts 13 through 21 are reversed.

### DISPOSITION

By operation of law Robert and Cathleen are deemed convicted of one count of rent skimming based on the findings in counts 7, 9, 10, 11 and 12. Any abstract of judgment as to either appellant shall reflect conviction for a single count of rent skimming. All of Robert and Cathleen's other convictions for rent skimming are reversed. Robert's convictions in counts 13 through 21 are reversed and his case is remanded for further proceedings. In all other respects the judgments are affirmed.

Work, Acting P. J., and Nares, J., concurred.

Petitions for a rehearing were denied June 12, 1996, and the opinion was modified to read as printed above. The petitions of both respondent and appellants for review by the Supreme Court were denied August 28, 1996.