[No. B163177. Second Dist., Div. Three. July 29, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
LINDA LUZ GUEVARA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.B, III.C, and III.D.

## COUNSEL

Michael J. Egan, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Scott A. Taryle, Deputy Attorneys General, for Plaintiff and Respondent.

**O**PINION

**ALDRICH, J.—**

## I.

## INTRODUCTION

Defendant and appellant Linda Luz Guevara was twice elected to the Huntington Park City Council even though she resided in Downey. In two different sets of election papers, she misrepresented where she lived and stated that she resided in Huntington Park. Appellant was convicted by jury of two counts of felony perjury by declaration (Pen. Code, § 118) and two counts of filing a false nomination paper or declaration of candidacy (Elec. Code, § 18203). Appellant appealed from the judgment.

Appellant contends: (1) the trial court erred in instructing the jury that the statute of limitations for the offense of filing a false nomination paper (Elec. Code, § 18203) was four years after discovery; (2) two of the convictions must be reversed because the statute of limitations had run prior to the commencement of the prosecution; (3) the trial court prejudicially erred in limiting cross-examination of a prosecution witness; and (4) the prosecution's failure to disclose a document in discovery (Pen. Code, § 1054.1) warranted a mistrial.

In the published portions of this opinion (pts. I, II, III.A, and IV) we address the first contention, which we conclude is unpersuasive. We hold that the statute of limitations for the offense of filing a false nomination paper (Elec. Code, § 18203) is four years after discovery. (Pen. Code, §§ 801.5, 803, subd. (c).) In the unpublished portions of this opinion (pts. III.B, III.C, and III.D), we conclude that the other contentions are unpersuasive. We affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Initial facts.*

Appellant met Cipriano Terrazas (Terrazas) in 1990. They lived together prior to marrying in December 1996. Appellant and Terrazas ran a business assisting landlords with evictions and preparing tax filings. During the pertinent years, the business was located on Florence Avenue in Huntington Park.

Alex, appellant's son from her first marriage, began attending school in the Downey Unified School District in 1990, when he was in kindergarten. Since the sixth grade, Alex participated in an educational program offered to a limited number of students. Residency of appellant, as Alex's parent and legal guardian, determined if Alex could participate in the program. Alex's school records contained a number of documents that had been submitted to the school district to verify appellant's residency and Alex's eligibility to attend Downey schools.

The documents contained in Alex's school file, other documents and testimony of uninterested third persons (such as landlords and neighbors), established that appellant did not reside in Huntington Park from 1990 through the time of trial. Rather, during this time, appellant resided on the following streets in Downey or the City of Lakewood:

—prior to 1991, Parrot Avenue, Downey;

—June 1991–1994, Belshire Avenue, Lakewood;

—1994–1995, Fifth Street, Downey;

—1996–1998, Paramount Boulevard, Downey; and

—1998–time of trial, Fostoria Street, Downey.

Appellant's mother, Dolores Silva (Silva), lived with her adult son (Louis) in a leased home on Walnut Street in Huntington Park. The lease was executed on December 10, 1996. The home had three bedrooms. Silva used one, Louis used one, and the third was used as a computer room/office.

One of appellant's clients owned a multiple-unit complex on 61st Street in Huntington Park.

B. *The elections and the false documents.*

1. *Election procedures in Huntington Park.*

To run for the Huntington Park City Council, a person had to be domiciled and registered to vote in Huntington Park. A potential candidate was required to complete numerous documents, including a candidate's statement. A packet of materials (a candidate's kit) was given to all potential candidates. It referred to the various Government and Election Codes that discussed the law of residency and domicile.

To become a candidate for the Huntington Park City Council, a person had to obtain 20 qualifying signatures on a petition. The "circulator" was the person who circulated the nominating petition. The circulator had to be a resident of, and registered to vote in, Huntington Park. The circulator could be the candidate or another person. A declaration of circulator was on the back of the nominating petition. In the declaration of circulator, the circulator provided his or her address and signed the document under penalty of perjury, verifying that the circulator was a resident of Huntington Park. Underneath the declaration of circulator, but in a separate section on the same page, was an affidavit of nominee and oath or affirmation of allegiance. In the affidavit of nominee, the candidate delineated the office for which he or she was a candidate and how his or her name was to appear on the ballot. The nominee signed this section of the document swearing to defend the Constitution of the United States and the State of California and to faithfully discharge the duties about which he or she was about to enter. The nominee's signature was then notarized. Underneath the notary's signature, the candidate provided his or her telephone number and address, thereby stating that he or she resided in Huntington Park. Although a candidate could own two homes, e.g., a home in Huntington Park and a mountain retreat in another city, the candidate had to be domiciled and registered to vote in Huntington Park. The focus was on where the person actually resided.

Marilyn Boyett (Boyett) was the elected city clerk. She met with all candidates each time they ran for office whether they were first time candidates or incumbents. Boyett provided each candidate with a candidate's kit, explained the documents, and discussed the election procedures and requirements, including the residence requirements. Boyett asked each candidate if he or she was a resident and registered voter of Huntington Park. If the candidate claimed to be a resident of Huntington Park, and a list provided by the county registrar of voters verified that information, Boyett accepted that the candidate was a Huntington Park resident.

Appellant ran in three elections. Each time, Boyett met with appellant and explained the election procedures, requirements, and nomination papers.

### 2. *The March 1997 election.*

Appellant ran for the Huntington Park City Council in the March 4, 1997, election. In her election documents, appellant stated her address was on Walnut Street in Huntington Park. Someone else served as the circulator of appellant's nominating petition. Appellant did not win the March 1997, election.

### 3. *The June 1997 election and the false March 1997 document (counts 1 and 3).*

Two days after losing the March 1997, election, appellant obtained papers to run for the Huntington Park City Council in a June 3, 1997, Special Election being held to replace a deceased council member. Boyett met with appellant and explained the paperwork, requirements, procedures, and the residency requirements. Appellant acted as her own circulator.

In the declaration of circulator dated March 6, 1997, appellant stated under penalty of perjury that she resided in Huntington Park. Underneath, in the affidavit of nominee section (dated March 7, 1997), appellant signed her name, she swore allegiance, and she stated that she resided on East Florence Avenue in Huntington Park. Appellant's signature was notarized. Appellant made the statements in the affidavit of nominee even though she resided in Downey.

Appellant won the special election for a two-year term.

### 4. *The March 1999 election and the false December 1998 document (counts 2 and 4).*

Appellant ran for reelection in the March 2, 1999, election. Boyett again discussed with appellant the residency requirements. Appellant served as her own circulator. The declaration of circulator and the affidavit of nominee were both dated December 4, 1998. In the declaration of circulator, appellant stated under penalty of perjury that she resided in Huntington Park. In the affidavit of nominee, she had her signature notarized, swore allegiance, and stated that she lived on Walnut Street in Huntington Park. Appellant made these statements even though she resided in Downey. Appellant won the election.

### C. *Appellant's defense.*

Appellant claimed she had not lied when she signed the March 1997, and December 1998, documents because at the time each document was signed she resided in Huntington Park. Appellant's defense was the following. Because she had been informed that she had to reside in Huntington Park to be on its City Council, she rented a room from her client on 61st Street in Huntington Park. Thereafter, she moved in with her mother and brother on Walnut Street in Huntington Park. When she was at her home on Walnut Street, she slept on an inflatable mattress. She did this because of her bad back. She spent weekdays in Huntington Park and joined her husband (Terrazas) and Alex in Downey on weekends. She argued this arrangement

was not illegal because a Huntington Park elected official could have two homes. According to appellant, this plan permitted her to be on the Huntington Park City Council and enabled Alex to be enrolled in Downey schools.[1]

### D. *Discovery of the crimes and procedure.*

There were two separate investigations relating to whether appellant resided in Huntington Park. The second investigation was opened on March 5, 2001. It led to the charges against appellant.

On September 17, 2001, a complaint was filed and a warrant was issued for appellant's arrest. The subsequently filed criminal information charged the following: By filing and signing the declaration of circulator dated March 6, 1997, appellant committed felony perjury by declaration (Pen. Code, § 118, count 1) and appellant filed a false nomination paper (Elec. Code, § 18203, count 3). By signing and filing the declaration of circulator dated December 4, 1998, appellant committed felony perjury by declaration (Pen. Code, § 118, count 2) and appellant filed a false nomination paper (Elec. Code, § 18203, count 4).

Appellant was convicted by jury as charged. Sentencing was suspended and appellant was placed on formal probation for five years, with a 180-day jail term, which could be served through work furlough or electronic monitoring. Appellant appealed from the judgment. We affirm.

### III.

### DISCUSSION

A. *The statute of limitations for the offense of filing a false nomination paper (Elec. Code, § 18203) is four years after discovery.*

Appellant contends the trial court erred in instructing the jury that the statute of limitations for filing a false nomination paper (Elec. Code,

---

[1] In finding appellant guilty, the jury rejected appellant's factual arguments that she resided in Huntington Park. (See Elec. Code, § 349 [defining "residence" and "domicile" and stating that for purposes of voting, residence is a person's domicile].) On appeal, appellant does not argue that the record lacks substantial evidence to support the convictions. (Cf. *People v. Mayer* (2003) 108 Cal.App.4th 403 [133 Cal.Rptr.2d 454] [candidate for South Gate's city council arranged to use a South Gate resident's mailing address; candidate's convictions for violating Penal Code section 118 [perjury], Election Code section 18203 [submitting false nomination paper], and Penal Code section 653f, subdivision (a) [solicitation of perjury] upheld.)

§ 18203)[2] was *four* years after discovery. In making this contention, appellant relies upon Penal Code section 801. Appellant's contention is unpersuasive because the proper analysis turns on the interplay of Penal Code sections 801.5 and 803, subdivision (c).

Penal Code section 801 provides, with exceptions not applicable to this case, that "prosecution for an offense punishable by imprisonment in the state prison shall be commenced within three years after commission of the offense." For purposes of determining the applicable statute of limitations, "[a]n offense is deemed punishable by the maximum punishment prescribed by statute for the offense, regardless of the punishment actually sought or imposed." (Pen. Code, § 805, subd. (a).) Elections Code, section 18203 is "punishable by a fine not exceeding one thousand dollars ($1,000) or by imprisonment in the state prison for 16 months or two or three years or by both the fine and imprisonment." (Elec. Code, § 18203; see fn. 2.) Prosecutions are commenced when any of the following occur: when an indictment or information is filed, a complaint is filed changing a misdemeanor infraction, a case is certified to the superior court, or an arrest warrant or bench warrant is issued. (Pen. Code, § 804.)

Appellant's argument that the statute of limitations for filing a false nomination paper is three years ignores Penal Code sections 801.5 and 803, subdivision (c).

Penal Code section 801.5 states that "Notwithstanding Section 801 or any other provision of law, prosecution for any offense described in subdivision (c) of Section 803 shall be commenced within four years after discovery of the commission of the offense, or within four years after the completion of the offense, whichever is later." (Stats. 1995, ch. 704, § 1, p. 5313.)

Penal Code section 803, subdivision (c) states that crimes having as a material element fraud or breach of fiduciary duty shall be subject to a discovery rule. The statute provides a list of 11 examples of such crimes, the first of which includes forgery and falsification of a public record. The statute and its first three examples are as follows: "A limitation of time prescribed in this chapter does not commence to run until the discovery of an offense described in this subdivision. This subdivision applies to an offense punishable by imprisonment in the state prison, *a material element of which is fraud or breach of a fiduciary obligation,* . . . or the basis of which is misconduct in office by a public officer, employee, or appointee, *including, but not limited*

---

[2] Elections Code section 18203 reads: "Any person who files or submits for filing a nomination paper or declaration of candidacy knowing that it or any part of it has been made falsely is punishable by a fine not exceeding one thousand dollars ($1,000) or by imprisonment in the state prison for 16 months or two or three years or by both the fine and imprisonment."

*to*, the following offenses: [¶] (1) Grand theft of any type, forgery, falsification of public records, or acceptance of a bribe by a public official or a public employee. [¶] (2) A violation of [Penal Code] Section[s] 72, 118, 118a, 132, or 134. [¶] (3) A violation of Section 25540, of any type, or Section 25541 of the Corporations Code." (Italics added.)[3]

The list of 11 examples enumerated in Penal Code section 803, subdivision (c) is not intended to be exhaustive. Crimes not specifically delineated are included under its umbrella as long as the crimes have as their core, or a material element of the crime is, fraud or breach of a fiduciary obligation. (*People v. Bell* (1996) 45 Cal.App.4th 1030, 1060–1061 [53 Cal.Rptr.2d 156]; *People v. Fine* (1997) 52 Cal.App.4th 1258, 1266 [61 Cal.Rptr.2d 254]; cf. 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Defenses, § 223, pp. 589–590.)

*People v. Bell, supra,* 45 Cal.App.4th 1030 provides an example of the applicability of Penal Code section 803, subdivision (c). *Bell* involved a rent skimming operation. (45 Cal.App. 4th at p. 1039.) One of the defendants was found guilty of, among other crimes, multiple counts of filing or recording a forged instrument in violation of Penal Code section 115, subdivision (a). (45 Cal.App.4th 1060.) The intent to defraud was not an element of Penal Code section 115 and it was not specifically listed as an offense covered by the tolling provision in Penal Code section 803, subdivision (c). (45 Cal.App.4th at p. 1061.) *Bell* noted that Penal Code section 132, dealing with falsification and spoliation of evidence was directed at protecting the integrity and

---

[3] Penal Code section 803, subdivision (c) reads: "A limitation of time prescribed in this chapter does not commence to run until the discovery of an offense described in this subdivision. This subdivision applies to an offense punishable by imprisonment in the state prison, *a material element of which is fraud or breach of a fiduciary obligation*, the commission of the crimes of theft or embezzlement upon an elder or dependent adult, or the basis of which is misconduct in office by a public officer, employee, or appointee, *including, but not limited to*, the following offenses: [¶] (1) *Grand theft of any type, forgery, falsification of public records, or acceptance of a bribe by a public official or a public employee.* [¶] (2) A violation of Section 72, 118, 118a, 132, or 134. [¶] (3) A violation of Section 25540, of any type, or Section 25541 of the Corporations Code. [¶] (4) A violation of Section 1090 or 27443 of the Government Code. [¶] (5) Felony welfare fraud or Medi-Cal fraud in violation of Section 11483 or 14107 of the Welfare and Institutions Code. [¶] (6) Felony insurance fraud in violation of Section 548 or 550 of this code or former Section 1871.1, or Section 1871.4, of the Insurance Code. [¶] (7) A violation of Section 580, 581, 582, 583, or 584 of the Business and Professions Code. [¶] (8) A violation of Section 22430 of the Business and Professions Code. [¶] (9) A violation of Section 10690 of the Health and Safety Code. [¶] (10) A violation of Section 529a. [¶] (11) A violation of subdivision (d) or (e) of Section 368." (Italics added.)

Our opinion is unaffected by the recent holding of *Stogner v. California* (2003) 539 U.S. 607 [156 L.Ed.2d 544, 123 S.Ct. 2446;] [as applied to the facts before it, ex post facto principles barred application of subdivision (g) of Penal Code section 803 dealing with the statute of limitations for sex-related child abuse].

reliability of public records and it also did not have intent to defraud as an element. (45 Cal.App.4th at p. 1061) However, Penal Code section 132 was specifically included as an offense covered by Penal Code section 803, subdivision (c)(2). *Bell* applied the discovery rule because the core purpose of Penal Code section 115 was "to protect the integrity and reliability of public records" (45 Cal.App.4th at p. 1061), which was within the purpose and scope of Penal Code section 803.

The discovery rule of Penal Code section 803, subdivision (c) was also applied in *People v. Fine, supra,* 52 Cal.App.4th 1258. In *Fine,* the defendants were charged with, among other crimes, violating Corporations Code section 25110, offering to sell and issue, and selling and issuing unqualified securities. (52 Cal.App.4th at p. 1261.) Corporations Code section 25110 was not specifically included in Penal Code section 803, subdivision (c)'s list of crimes to which the discovery rule applied. However, it "involve[d] a deception upon the buyer by the unqualified securities seller." (*People v. Fine, supra,* at p. 1265.) The fundamental purpose of Corporations Code section 25110 was to "ensure that a securities seller has made a full, complete and accurate disclosure of all information relevant and material to the buyer's decision to purchase." (52 Cal.App.4th at p. 1265.) The lack of adequate disclosure made fraud possible. (*Ibid.*) The fraudulent nature of the crime and the Legislature's intent to apply the tolling provisions to any type of violations of Corporations Code section 25540 led the *Fine* court to conclude that the tolling provisions of Penal Code section 803 applied to the violation of Corporations Code section 25110. (*People v. Fine, supra,* at pp. 1265–1266.)

█ We are dealing with Elections Code section 18203. (See fn. 2.) It is designed to protect the integrity and reliability of publicly filed election documents and has at its core protections against fraud. It is designed to assure the complete and accurate disclosure of information contained in nominating papers and declarations of candidacy. Thus, as in *Bell and Fine,* the discovery provisions of Penal Code section 803, subdivision (c) apply. Since a violation of Elections Code section 18203 falls within the ambit of Penal Code section 803, subdivision (c), Penal Code section 801.5 makes the statute of limitations for violating Elections Code section 18203 four years after discovery.[4]

---

[4] *People v. Bell, supra,* 45 Cal.App.4th 1030, includes a discussion about the standard of review for an alleged instructional error relating to the statute of limitations. (*Id.* at pp. 1065–1067.) *People v. Smith* (2002) 98 Cal.App.4th 1182, 1193–1194 [120 Cal.Rptr.2d 185], and *People v. Stanfill* (1999) 76 Cal.App.4th 1137, 1153–1155 [90 Cal.Rptr.2d 885], disagree as to whether this discussion in *Bell* remains accurate in light of subsequent United States Supreme Court and California Supreme Court authority. This is not relevant to our analysis and we need not take a position on the dispute.

Appellant cites to *People v. Bell, supra,* 45 Cal.App.4th 1030 to argue that even if the discovery rules apply here, the statute of limitations is *three* years after discovery, and not *four.* Appellant makes this argument because while *Bell* concludes that the crime of filing or recording a false instrument (Pen. Code, § 115, subd. (a)) falls within the confines of Penal Code section 803, subdivision (c), (*People v. Bell, supra,* at pp. 1060–1061), *Bell's* further discussion is with regard to a *three*-year-after-discovery statute of limitations. (*Id.* at p. 1061.) *Bell* does so without considering Penal Code section 801.5.

The current version of Penal Code section 801.5 applies a four-year after-discovery statute of limitations to a broad spectrum of crimes. (Stats. 1995, ch. 704, § 1, p. 5313.) Prior versions of the statute, the ones that would have been applicable in *Bell,* had a three-year-after-discovery statute of limitations applied to a limited number of crimes. Unlike the present statute, the prior versions of section 801.5 did not apply to all offenses punishable by imprisonment in the state prison, a material element of which was fraud or breach of a fiduciary obligation.[5] Since *Bell* did not discuss the interplay between Penal Code sections 803, subdivision (c) and 801.5, it may not be used as authority for the proposition appellant asserts. (*People v. Banks* (1993) 6 Cal.4th 926, 945 [25 Cal.Rptr.2d 524, 863 P.2d 769] [cases may not be used for propositions not considered].)[6]

---

[5] Penal Code section 801.5 was added by a 1986 legislative enactment and was amended in 1990 and 1994. (Stats. 1986, ch. 1324, § 2, p. 4675; Stats. 1990, ch. 587, § 1, p. 2996; Stats. 1994, ch. 841, § 5, p. 4181; Stats. 1994, ch. 1031, § 3, p. 6267.) The 1986, 1990, and 1994 versions contained a three-year-after-discovery statute. These versions of the statute applied either to insurance fraud, or to insurance and workers' compensation fraud.

Penal Code section 801.5 was amended in 1995 to its present form. The amendments increased the statute to *four* years after discovery and made the provision applicable to a broader range of crimes by amending the statute to state that "any offense described in subdivision (c) of Section 803" is included. (Stats. 1995, ch. 704, § 1, p. 5313.)

Although *People v. Bell, supra,* 45 Cal.App.4th 1030 was decided in May 1996, the versions of the statute enacted before the 1995 amendments would have been applicable. In *Bell,* "[t]he last acquisition of a parcel of property which supported a charge of rent skimming was on October 1, 1989 . . . ." (*People v. Bell, supra,* at p. 1058) and the "forgery and false filings were merely aspects of [the] rent skimming scheme." (*Id.* at p. 1064.) The complaint was filed and an arrest warrant issued on the rent skimming offenses in June 1992. (*Id.* at p. 1063.) The forgery and false filing charges were brought into the case by an April 1993 amended information. (*Ibid.*)

[6] The recent case of *People v. Salas* (2004) 119 Cal.App.4th 805, 818–819 [14 Cal.Rptr.3d 689]) states that the 1995 amendments to Penal Code section 801.5 applied the tolling provisions of Penal Code section 803, subdivision (c) to violations of Corporations Code section 25110 "by virtue of it being within the penalty language of [Corporations Code] section 25540, subdivision (a). (Fn. omitted.)" (*People v. Salas,* at p. 819.)

*People v. Salas* also notes that the discussion in *People v. Fine, supra,* 52 Cal.App.4th 1258, to which we refer above "only was whether the tolling provision in Penal Code section 803, subdivision (c) applied to [Corporations Code] section 25110." (*People v.*

The trial court did not err by instructing the jury that the statute of limitations for the offense of filing a false nomination paper (Elec. Code, § 18203) was four years after discovery.

B.–D.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV.

## DISPOSITION

The judgment is affirmed.

Croskey, Acting P. J., and Kitching, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 20, 2004. Werdegar, J., did not participate therein.

---

*Salas, supra,* 119 Cal.App.4th at p. 819.) As *Salas* additionally noted, *Fine* was not called upon to consider if the statute of limitations was three or four years and further, the *Fine* prosecution commenced prior to the effective date of the 1995 amendment. (*Ibid.*)

[*]See footnote, *ante*, page 17.