Filed 10/23/15  P. v. Zelaya CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JOSE ARMANDO ZELAYA,<br><br>  Defendant and Appellant. | B256544<br><br>(Los Angeles County<br>Super. Ct. No. VA127216) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Brian F. Gasdia, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Michael W. Flynn, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

## *INTRODUCTION*

A jury convicted defendant Jose Armando Zelaya of one count of second-degree robbery and one count of possession of a firearm by a felon. The jury also found two firearm allegations true in connection with the robbery count. Zelaya waived jury trial on several prior-conviction enhancements, but did not waive a bench trial. A bench trial never took place, no evidence was presented, and no finding was made on the truth of the prior-conviction allegations.

On appeal, Zelaya contends the trial court erred in increasing his sentence by 10 years based on prior-conviction allegations that were neither admitted, tried, nor proven. We agree. We vacate the sentence and remand the matter for resentencing. In all other respects, we affirm.

## *PROCEDURAL BACKGROUND*[1]

The charges against Zelaya stem from the October 2012 robbery of a Huntington Park liquor store. The information filed on November 27, 2012 alleged three counts against him. Counts one and two charged Zelaya with second-degree robbery (Pen. Code,[2] § 211), and alleged he both used a firearm (§ 12022.53, subd. (b)) and was personally armed with a firearm (§ 12022, subd. (a)(1)). Count two and its related enhancements were later dismissed under section 995. Count three charged Zelaya with possession of a firearm by a felon (§ 29800, subd. (a)(1)).

The information also alleged three strike priors (§ 667, subds. (b)–(i); § 1170.12, subds. (a)–(d)), three serious-felony priors (§ 667, subd. (a)(1)), and one prison prior (§ 667.5, subd. (b)).[3] All prior-conviction allegations stemmed from the same

---

[1]    We omit a detailed statement of the facts underlying the convictions because it is unnecessary to our determination of the legal issues presented on appeal.

[2]    All undesignated statutory references are to the Penal Code.

[3]    The prosecution also alleged, but later elected not to proceed on, a prison prior (§ 667.5, subd. (b)) from a 1997 drug case.

1996 case, in which Zelaya was allegedly convicted of two counts of robbery and one count of burglary.[4]

On November 27, 2012, Zelaya pled not guilty and denied the allegations. On December 5, 2013, the court bifurcated the determination of the prior-conviction allegations from the substantive crimes. Jury trial of the guilt phase began on December 6, 2013. That afternoon, Zelaya, with the assistance of a Spanish language interpreter, testified in his own defense and admitted the prior convictions for impeachment purposes.[5] Defense counsel also stipulated to the prior convictions for impeachment purposes. The trial court accepted the stipulations without advising Zelaya of any trial rights or of the penal consequences of the admissions. While the jury was deliberating, Zelaya waived his right to a jury trial on the prior-conviction allegations. On December 9, 2013, the jury found Zelaya guilty of counts one and three, and found the gun allegations true.

A bench trial on the prior-conviction allegations was continued repeatedly over the next five and a half months. Although Zelaya waived statutory time for sentencing seven times, there is no evidence in the record that he ever waived speedy-trial time or that anyone agreed to continue the priors trial beyond May 7, 2014.

---

[4] There was some confusion about the date of the convictions. At the preliminary hearing, the People alleged a conviction date of May 19, 1996. The information alleged a conviction date of May 16, 1996. At trial, Zelaya testified he had been convicted in 1995, but counsel stipulated the conviction occurred on April 18, 1996. After the jury reached its guilt-phase verdict, the information was corrected by interlineation to allege a conviction date of April 18, 1996.

[5] On direct examination, counsel asked, "The following year 1995, do you remember an incident, one incident where you were convicted for residential burglary and two theft-related offenses based on one thing that happened?" Zelaya answered, "Yes." On cross-examination, Zelaya admitted that he was convicted of residential burglary and two theft-related crimes. When asked if the convictions were for felony offenses, he answered, "I was convicted but I don't know anything about the law and how that happened."

Meanwhile, on February 28, 2014, defense counsel moved under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) to dismiss one or more of Zelaya's alleged prior strike convictions. On April 3, 2014, counsel indicated Zelaya was not going to admit the prior convictions.

Notwithstanding the failure to hold a priors trial or make findings on the truth of the prior-conviction allegations, the court held a contested *Romero* hearing on May 23, 2014. After the hearing, the court dismissed two of the alleged strike priors and sentenced Zelaya to 25 years in state prison. The court selected count one (§ 211) as the base term, and sentenced Zelaya to 10 years (the upper term of five years, doubled for the strike prior). The court added 10 years for the personal-use firearm enhancement (§ 12022.53, subd. (b)),[6] and five years for the serious-felony prior (§ 667, subd. (a)(1)), to run consecutive.[7] The court stayed count three (§ 29800, subd. (a)(1)) under section 654, and dismissed the prison prior (§ 667.5, subd. (b)).

Zelaya filed a timely notice of appeal.

## DISCUSSION

Zelaya contends the court violated his due process rights when it imposed a sentence based on prior-conviction allegations that were neither tried nor admitted. The People concede "it appears" no evidence regarding the prior-conviction allegations was presented and no finding was made by the court. However, the People argue

---

[6] The court did not impose, strike, or stay the other firearm enhancement (§ 12022, subd. (a)(1)). The record does not reveal whether the omission was inadvertent or intentional. We note for purposes of resentencing that a true finding on a use enhancement necessarily includes an armed finding—and a defendant may not be penalized for both. (*People v. Wischemann* (1979) 94 Cal.App.3d 162, 175–176.)

[7] Both the minute order and the abstract of judgment indicate the court imposed five years for a "665(A)(1)" enhancement. Because that statute does not exist, and because the notation conflicts with the oral pronouncement of sentence, this appears to be a clerical error that should be corrected upon resentencing.

4

Zelaya admitted the truth of the enhancements "by way of stipulation." As we explain below, Zelaya did not stipulate to the truth of the prior-conviction allegations.

1. *A Bench Trial on the Prior-Conviction Allegations Was Never Conducted*

All prior-conviction enhancements "shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact." (§ 1170.1, subd. (e); see § 1018 [guilty plea must be entered by defendant in open court].) The People bear the burden of proving the allegations beyond a reasonable doubt. (*In re Yurko* (1974) 10 Cal.3d 857, 862-863.) If a defendant does not admit the prior convictions, he has the right to a jury trial on that issue, or to a court trial if he waives jury trial. (§ 1025, subds. (b), (c).) The trier of fact must then enter a "verdict or finding upon the charge of previous conviction" of either true or not true. (§ 1158.)

In this case, the People alleged Zelaya had sustained three prior-felony convictions all stemming from the same 1996 case. Trial on these allegations was bifurcated. While the jury was deliberating on the substantive crimes, Zelaya waived jury trial, but not a bench trial, on the allegations. The priors trial was continued at least seven times, but neither a bench trial nor any other proceeding was ever conducted regarding the truth of the allegations. Nevertheless, proceedings went forward as if a true finding on the allegations had been made. For example, the court held a contested hearing to determine whether to dismiss one or more strikes under *Romero*, then dismissed two of the prior strikes, and imposed a second-strike sentence and a five-year serious-felony enhancement based on the third.

The People concede the record in this case does not contain a true finding on the prior convictions, but contend no finding was required because Zelaya "voluntarily and intelligently waived his right to a trial and admitted his prior conviction[s]." For the reasons discussed below, we disagree.

2. *Zelaya Did Not Admit the Prior-Felony Convictions for Sentencing*

A criminal defendant may not be deprived of life, liberty, or property without due process of law. (Cal. Const., art. I, § 15; U.S. Const., 14th Amend.) "Numerous California penal statutes allow increased punishment to be imposed upon a defendant if

the prosecution alleges and proves that the defendant has suffered one or more prior convictions." (*People v. Saunders* (1993) 5 Cal.4th 580, 585.) However, as with substantive crimes, before the State may sentence a defendant to prison as a recidivist, it must afford him a lawful, fair process—including " 'adequate notice' and 'an opportunity to challenge the accuracy and validity of the alleged prior convictions' "— and must prove each element of the sentence enhancement beyond a reasonable doubt. (*People v. Cross* (2015) 61 Cal.4th 164, 173 (*Cross*); *People v. Tenner* (1993) 6 Cal.4th 559, 566 [proof beyond a reasonable doubt].) A defendant may admit the truth of a prior-conviction allegation, just as he may plead guilty to a substantive offense. (§ 1170, subd. (e).) Yet "[b]ecause of the significant rights at stake[,] . . . courts must exercise a comparable solicitude in extracting an admission of the truth of alleged prior convictions" as in accepting a guilty plea. (*In re Yurko*, *supra*, 10 Cal.3d at p. 863.) Accordingly, "before a court accepts an accused's admission that he has suffered prior felony convictions," he must be given "express and specific admonitions as to the constitutional rights" he is giving up. (*Ibid*.)

Here, the People insist Zelaya "admitted the truth of his prior conviction by way of stipulation" through some combination of (1) his guilt-phase testimony, (2) counsel's *Romero* motion, (3) the prosecutor's ability to prove the priors, and (4) the parties' erroneous assumption that the priors had been proven. The People provide no authority for the novel proposition that we may infer an admission for sentencing purposes from these facts, assumptions, or errors. Accordingly, we decline the People's invitation to uphold Zelaya's purported admission and resulting sentence on this basis.

" '[T]he issue of guilt of the primary offenses . . . and the proof of prior convictions are clearly severable. [Citation.]' " (*People v. Calderon* (1994) 9 Cal.4th 69, 74; *id.* at pp. 74-78.) Therefore, in a jury trial, the court has the discretion to bifurcate the determination of the truth of an alleged prior conviction from the determination of the defendant's guilt of the charged offense. (*Id.* at pp. 73–74.) The court in this case did so. Zelaya would proceed to trial for the substantive crimes first;

6

then, if convicted, the truth of the prior-conviction allegations would be determined in a subsequent proceeding.

During the guilt phase of the trial, Zelaya testified on his own behalf with the assistance of the Spanish-language interpreter, and admitted suffering three prior convictions. On direct examination, counsel asked, "The following year 1995, do you remember an incident, one incident where you were convicted for residential burglary and two theft-related offenses based on one thing that happened?" Zelaya answered, "Yes." On cross-examination, Zelaya admitted that he was convicted of residential burglary and two theft-related crimes. When asked if the convictions were for felony offenses, he answered, "I was convicted but I don't know anything about the law and how that happened." Because the prosecutor believed the admissions were unclear, defense counsel also stipulated to the convictions.[8] This testimony would have been admissible against Zelaya in the subsequent prior-conviction trial—and might have been persuasive evidence. (*People v. Elmore* (1990) 225 Cal.App.3d 953, 959–960 [defendant's guilt phase testimony admissible in bifurcated portion of trial].) However, since the testimony was only elicited in the guilt phase of a bifurcated trial, it did not, on its own, absolve the People of their obligation to hold the second proceeding. (*Ibid.*)

Moreover, the admission was insufficient to establish the elements of any of the prior-conviction allegations. For example, Zelaya's testimony did not establish the conviction date or case number. It did not establish that the convictions were for felonies. It also did not establish that the offenses qualified as strike priors (§ 667, subds. (b)–(i); § 1170.12, subds. (a)–(d)) or serious-felony priors (§ 667, subd. (a)(1)). Nor did Zelaya's testimony establish the elements of the alleged prison prior (§ 667.5,

_____

[8]     The defense stipulations apparently established the prior-conviction element of count three (§ 29800, subd. (a)(1)). The court accepted the stipulations without advising Zelaya of any trial rights or of the penal consequences of the admissions. Because the issue is not before us, we offer no opinion on whether pre-stipulation waivers were required for purposes of count three. (See *Cross*, *supra*, 61 Cal.4th at pp. 174–179 [where unwarned stipulation to prior conviction has direct consequence of subjecting defendant to a longer prison term, stipulation is invalid and sentence must be set aside].)

subd. (b))—namely, that he served a prison term for a felony conviction (*People v. Winslow* (1995) 40 Cal.App.4th 680, 687) and was convicted of a new felony committed within five years of his release (*People v. Fielder* (2004) 114 Cal.App.4th 1221, 1232 [prosecution bears burden of proving that washout period does not apply to a particular conviction]).

Further, both the pretrial hearing on this issue and the parties' post-trial actions demonstrate that they intended to limit any admission by Zelaya to the guilt phase of the proceedings. Before trial, the court held a lengthy Evidence Code section 402 hearing to determine the permissible scope of impeachment if Zelaya testified. There was no indication at that hearing that Zelaya's testimony or counsel's stipulations, on their own and without further prosecutorial action, could prove the bifurcated allegations. Indeed, after the case was submitted to the jury, the court and the prosecutor both explained Zelaya's right to a jury trial on the prior-conviction allegations. The court and the prosecutor both told him that even with a jury waiver, he would retain his right to a court trial. Zelaya then waived jury trial. The explanations and jury waiver would have been unnecessary and inaccurate if Zelaya had already admitted the allegations.

The People also contend Zelaya "admitted his prior convictions in his *Romero* motion." The People not only fail to provide any authority for the proposition that defense counsel can waive a priors trial on his client's behalf, but also fail to disclose authority contrary to that position. (See § 1170.1, subd. (e) ["All enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact."]; § 1018 ["[E]very plea shall be entered or withdrawn by the defendant himself or herself in open court."]; *People v. Golde* (2008) 163 Cal.App.4th 101, 113 [defendant not bound by counsel's admission that defendant is subject to a sentence enhancement].) In any event, we need not resolve that issue because the *Romero* motion did not constitute an admission. A motion to dismiss a prior-strike allegation may be made any time before, during, or after trial—and courts may exercise their power to dismiss any time during the proceedings. (*Romero*, *supra*, 13 Cal.4th at pp. 524–525, and fn. 11; see Bigelow & Couzens, Sentencing Cal. Crimes

(The Rutter Group 2015) § 20:52.) It follows that even if defense counsel's statements could bind Zelaya—which they cannot (§ 1018)—a *Romero* motion filed before the adjudication of prior-conviction allegations does not, by its timing alone, admit those allegations.

The parties' actions compel the same conclusion. On December 9, 2013, after the jury was excused, the parties and the court discussed scheduling. They agreed the court would conduct the priors trial and the sentencing hearing on the same date. The parties continued the priors trial that day, and continued it again on January 28, 2014. On February 28, 2014, defense counsel filed the *Romero* motion. Because the *Romero* motion needed to be filed before the sentencing hearing, and because the priors trial was scheduled for the same day as the sentencing hearing, counsel could not wait until after the priors trial to file the motion. Moreover, after counsel filed the *Romero* motion, the parties continued the priors trial five more times. On one of these occasions, April 3, 2014, defense counsel indicated that Zelaya did not plan to admit the prior convictions. If Zelaya had already "admitted his prior convictions in his *Romero* motion," as the People suggest, the continuances were unnecessary and counsel's statement nonsensical.

Next, the People contend Zelaya must have admitted the truth of the prior-conviction allegations because he had "a strong basis" to do so—namely, "that the prosecution had already demonstrated its ability to prove appellant's prior conviction" when they produced a copy of Zelaya's rap sheet at the preliminary hearing a year and a half earlier. However, while a rap sheet is admissible to prove identity, it is not part of the record of conviction, and is therefore inadmissible to demonstrate the nature or circumstances of the underlying prior. (*People v. Martinez* (2000) 22 Cal.4th 106, 117.) And importantly, even defendants facing powerful evidence may—and often do— require the State to prove their guilt beyond a reasonable doubt. The People's ability to prove their case does not absolve them of the responsibility of actually doing so.

We now turn to the People's contention that Zelaya must have admitted the allegations because the court and the parties acted as if they had been proven. We decline to use the court's or the lawyers' error as evidence that no error occurred—

9

particularly because the record reveals the prosecutor was the likely source of any misunderstanding, and Zelaya may have tried to bring the issue to the court's attention. For example, on May 7, 2014, although a priors trial had not taken place, the prosecutor informed the court the *Romero* motion was the "next step" in the case. He then asked Zelaya to waive statutory time "so the judge can hear your motion to whether to strike one of your prior strikes." At the start of the *Romero* hearing, Zelaya asked the court, "May your honor tell me why do I have two strikes from the past?" The court's response revealed its belief that the priors had been proven.

We are also troubled by the People's contention that Zelaya voluntarily and intelligently waived a priors trial despite the absence of required constitutional advisements. (See *In re Yurko*, *supra*, 10 Cal.3d at p. 862 [defendant must be given *Boykin-Tahl* waivers and notice of penal consequences before admitting truth of alleged prior-felony convictions].) Quite simply, the record before us contains no evidence Zelaya was ever fully—or even summarily—advised of the rights he would be giving up if he decided to waive trial and admit the truth of the prior convictions. For example, the People contend Zelaya was "aware of the penalties that could be imposed as a consequence of a true finding on the prior conviction allegation . . . [since he] was alerted at the outset of his preliminary hearing that his case was a 'life case' because he had 'one, two, three previous strike robberies.'" The People excerpt this language from a longer statement made before the preliminary hearing: "Well, he's got three—it's a third. He's got three rob—is that the—he has one, two, three previous strike robberies. . . . So it's a life case." We are aware of no case that holds any statement, much less a statement as confusing as this one, made before the preliminary hearing and over 18 months before sentencing, adequately advised a criminal defendant of "the full penal effect of a finding of the truth of an allegation of prior convictions." (*In re Yurko*, *supra*, 10 Cal.3d at p. 865.) In short, the record before us is not a record of technical defect; it is a record devoid of any meaningful effort to ensure the defendant was making an informed decision.

10

3.    *Because We Remand for Resentencing, the Custody-Credit Issue is Moot*

The People contend Zelaya received one extra day of local conduct credit. (§ 2933.1, subd. (c) [15% limit on conduct credits where defendant convicted of a violent felony]; *People v. Ramos* (1996) 50 Cal.App.4th 810, 816–817 [15% limited to largest whole number; no credit for partial days].)  However, the People fail to also note that Zelaya was entitled to one additional day of actual credit.  (See *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48 [defendant is entitled to actual custody credit for every day of incarceration in county jail, including partial days; credit for day of arrest and the day of sentencing].)  Because we remand for resentencing, this issue is moot.  We are confident the court will calculate the credits correctly upon resentencing.

## DISPOSITION

We vacate the sentence and remand for resentencing.[9] In all other respects, we affirm. Upon resentencing, we direct the court to prepare a corrected minute order and an amended abstract of judgment, and to forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

LAVIN, J.

WE CONCUR:

EDMON, P. J.

ALDRICH, J.

---

[9]     We decline to direct the trial court to conduct a trial on the prior-conviction allegations as neither party has presented us with authority for the proposition that a belated trial is the appropriate remedy under the circumstances before us. In each case cited to us, the defendant appealed after a priors trial was held and prior-conviction allegations were found true. (See *Monge v. California* (1998) 524 U.S. 721 [118 S.Ct. 2246] [double jeopardy does not bar retrial of priors allegation reversed for insufficient evidence]; *People v. Barragan* (2004) 32 Cal.4th 236 [retrial not barred by due process, law of the case, or res judicata].) Those cases did not have occasion to consider the proper remedy where sentence is imposed for enhancements that were neither admitted, nor proven, nor found true. (See *People v. Guevara* (2004) 121 Cal.App.4th 17, 27 ["cases may not be used for propositions not considered"].)