Filed 7/21/14  P. v. Gill CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039412 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1101476) |
| v. | |
| JULISSA IMELDA GILL, | |
| Defendant and Appellant. | |

Defendant Julissa Imelda Gill appeals her convictions following a jury trial for a count of obtaining money or property by false pretenses (Pen. Code, § 532),[1] a count of using personal identifying information without authorization (§ 530.5, subd. (a)), two counts of recording a false instrument (§ 115), and four counts of forging the handwriting of another (§ 470, subd. (b)).  On appeal, she argues the trial court abused its discretion when it denied her motion for a new trial, because her trial counsel rendered ineffective assistance by failing to pursue a statute of limitations defense.  She also contends her convictions for recording a false instrument must be reversed due to insufficient evidence.  We conclude the trial court did not abuse its discretion in denying her motion for a new trial and substantial evidence supports her convictions for recording false instruments.  We affirm.

---

[1] Further unspecified statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Information and the Complaint*

On March 2, 2011, the district attorney filed a felony complaint charging defendant with a count of obtaining money or property by false pretenses (§ 532; count 1), a count of using personal identifying information without authorization (§ 530.5, subd. (a); count 2), two counts of recording a false instrument (§ 115; counts 3 & 5), and two counts of knowingly performing a notarial act on a false or forged trust deed (Gov. Code, § 8214.2; counts 4 & 6).

In April 2012, defendant was charged by information with a count of obtaining money by false pretenses (§ 532; count 1), a count of using personal identifying information without authorization (§ 530.5, subd. (a); count 2), two counts of recording a false instrument (§ 115; counts 3 & 5), and four counts of counterfeiting or forging the seal of handwriting of another (§ 470, subd. (b); counts 4, 6, 7 & 8). The information alleged each count was within the applicable four-year statute of limitations, section 803.5 for counts 2, 3, and 5, and section 801.5 for counts 1, 4, 6, 7 and 8.

*The Jury Trial*

**The People's Evidence**

The prosecution claimed defendant, a real estate agent for Century 21 Su Casa, stole the identity of a man named Jose Valdez in order to secure a deed of trust and finance the purchase of a home for her client.

In December 2006, Tadas Narauskas, a real estate agent, listed a house on Curtner Avenue for sale, which was purchased by a man represented by defendant, Eddy Niquen. Letty Chow was the loan broker. Niquen said he contacted defendant after receiving a flier at his apartment and gave her his personal documents. Niquen, who spoke little English, signed documents prepared by defendant and purchased the house for $635,000.

2

Niquen did not realize the house was bought using Jose Valdez's stolen credit. Defendant received a commission for closing the sale.

Gilberto Garcia, a friend of defendant, testified that defendant had asked him to sign some of the paperwork associated with the purchase of the house under the name "Jose L. Valdez." Garcia said defendant told him she needed his help because the individual who needed to sign the documents was out of the country due to an emergency. Garcia said defendant showed him a letter indicating he had power of attorney over Valdez, permitting him to sign on his behalf. Garcia signed two deeds of trust under Valdez's name, which secured two loans.

Narauskas said the original purchase agreement he received listed two individuals as buyers, Frederico Fernandez and Jose Vasquez. Later, he received an addendum to the purchase agreement changing the buyer to "Jose L. Valdez." Defendant's name was on this addendum to the purchase agreement. Ultimately, the grant deed indicated the property was transferred to "Jose Valdez" and "Eddy R. Niquen" as joint tenants. Niquen's name was not on the deeds of trusts securing the loans.

Delilah Mendoza, a notary, was present when Garcia signed some of the documents under the name "Jose L. Valdez." Defendant, Chow, and Narauskas were present during the signing. Defendant did not tell Mendoza that Garcia was signing on behalf of Valdez. Mendoza unwittingly recorded a false driver's license for "Mr. Valdez" and was not shown a power of attorney. Later, an investigator who received the loan file from the bank testified there were no power of attorney documents in the application packet.

Marcos Rodriguez, an accountant, testified he drafted a false letter asserting he rendered tax preparation services to a "Mr. Jose Valdez." Rodriguez said defendant had asked him to write false documents for her. Rodriguez received $100 per letter from defendant and knew defendant used the letters to secure loans for her clients.

3

Jose Valdez denied knowing defendant. Valdez said he attended a Cinco de Mayo festival in May 2006 and filled out a form with some personal information indicating he was interested in purchasing a house. In October or November 2006, he received a call asking if he would like to loan out his credit for $10,000, which he declined. In January 2007, Valdez and his wife began to talk about buying a house. A month later, Valdez went to Century 21 Su Casa and filled out a form with his information. However, he did not go forward with a purchase.

In March 2007, Valdez again became interested in purchasing a home. This time, he heard an advertisement on the radio for Juan Montoya. Valdez called Montoya in mid-March 2007 and told him he was in the process of buying a house. After taking down some of Valdez's personal information, Montoya asked Valdez why he was interested in purchasing a house when he had just bought one a few months earlier. Surprised, Valdez told Montoya he had never bought a house before.

Valdez denied signing documents to purchase the Curtner Avenue house and denied giving anyone permission to complete a purchase under his name. Valdez reported the crime to the police on March 26, 2007.

**Defendant's Evidence**

Defendant testified on her own behalf. She said she knew a man named "Jose Vasquez Valdez," a different individual than the Jose Valdez that had testified at trial. Vasquez Valdez used to come by the Century 21 Su Casa office to help clean houses and wash windows. He voluntarily offered to help Niquen obtain the loan to purchase the Curtner Avenue home. Defendant said she was helping Niquen build credit and predicted the house could be refinanced in two years. At that point, Niquen could take Vasquez Valdez's name off the title.

Defendant insisted it was common practice for transactions to include other individuals, usually family members or friends, if buyers did not qualify for loans.

4

Defendant said she explained to Niquen that Vasquez Valdez would be on the title and also explained the plan to build his credit and refinance in a few years.

Defendant asserted that once a real estate agent turns the buyer over to the loan broker, the agent is typically no longer involved in assisting the buyer with loan applications. Defendant maintained she introduced Niquen and his brothers to Chow, the loan broker. She also introduced Vasquez Valdez to Chow. Defendant said she was familiar with the loan approval process but did not help Chow with the paperwork for Niquen or Vasquez Valdez. She also denied involvement in creating the deeds of trust. She maintained Chow perpetrated the fraud without her knowledge and insisted she never asked Rodriguez to prepare false letters or documents on her behalf.

Defendant said that before the transaction could be completed, Vasquez Valdez left the country due to an emergency. He originally planned to grant defendant power of attorney to complete the paperwork. However, defendant was told by the title company that she could not sign for Vasquez Valdez because she was an interested party. Therefore, she asked her friend Garcia to sign the documents under a power of attorney.

Feliz Ardo Inzunza worked at Century 21 Su Casa from late 2004 to early 2007. Inzunza said he remembered an individual by the name of "Jose" who worked on houses for Century 21 Su Casa. Jose would come to the office sometimes twice a week.

*The Jury's Verdict and Defendant's Motion for a New Trial*

Following a trial, the jury convicted defendant on all counts. The jury also found prosecution for all counts was brought within the relevant four-year statute of limitations.

On November 27, 2012, defendant moved for a new trial. She argued her trial counsel rendered ineffective assistance, because he failed to pursue a defense based on the statute of limitations. The People opposed the motion, arguing the statute of limitations had been tolled pursuant to section 803, subdivision (b) when the criminal complaint and arrest warrant were issued. On January 14, 2013, the trial court denied

5

defendant's motion and sentenced her to a term of one year in county jail and three years of probation. Defendant appealed.

DISCUSSION

On appeal, defendant argues her trial counsel rendered ineffective assistance for failing to pursue a statute of limitations defense on all of her counts. She also contends her convictions for recording a false instrument are supported by insufficient evidence.

1. *Ineffective Assistance of Counsel*

**Standard of Review and Statutory Framework**

A defendant may raise a claim of ineffective assistance of counsel in a motion for a new trial. (*People v. Fosselman* (1983) 33 Cal.3d 572, 582.) When a trial court denies a motion for new trial on one of the statutorily enumerated grounds, we review this determination for an abuse of discretion. (*People v. Turner* (1994) 8 Cal.4th 137, 212, disapproved on other grounds in *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5.)

However, we take a different approach when we review a denial of a motion for a new trial based on a claim of ineffective assistance. We engage in a two-step process akin to our review of a ruling on a motion to suppress. (*People v. Taylor* (1984) 162 Cal.App.3d 720, 724.) First, we defer to the trial court's determination of the relevant facts. "On appeal, all presumptions favor the trial court's exercise of its power to judge the credibility of witnesses, resolve any conflicts in testimony, weigh the evidence, and draw factual inferences." (*Ibid.*) If the trial court's findings of fact, expressed or implied, are supported by substantial evidence we will uphold them on appeal. (*Ibid.*) Second, we examine the trial court's determination, based on the facts, that defendant has failed to demonstrate his trial counsel was ineffective or failed to show he suffered prejudice as a result of the alleged deficiencies. These are mixed determinations of law and fact. "To the extent that these are questions of law, the appellate court is not bound by the substantial evidence rule, but has ' "the ultimate responsibility . . . to measure the

6

facts, as found by the trier, against the constitutional standard . . . .” ’ ” (*Id*. at p. 725.) On reviewing the trial court's determination on questions of law we exercise our independent judgment. (*Ibid*.)

In order to succeed on a claim of ineffective assistance of counsel, defendant must show counsel failed to act in a manner to be expected of a reasonably competent attorney acting as a diligent advocate and she was prejudiced thereby. (*People v*. *Ledesma* (1987) 43 Cal.3d 171, 216-217; *Strickland v*. *Washington* (1984) 466 U.S. 668, 684 [discussing federal constitutional rights]; *People v*. *Pope* (1979) 23 Cal.3d 412, 422 [discussing both state and federal constitutional rights].) We " 'need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.' " (*In re Jackson* (1992) 3 Cal.4th 578, 604, quoting *Strickland v*. *Washington*, *supra*, at p. 697.)

**Statute of Limitations Defense for Counts 4, 6, 7 and 8**

First, defendant contends her trial counsel should have argued her four counts of counterfeiting or forging the seal or handwriting of another (§ 470, subd. (b); counts 4, 6, 7 & 8) were barred by the statute of limitations.

Section 470, subdivision (b) provides that "[e]very person who, with the intent to defraud, counterfeits or forges the seal or handwriting of another is guilty of forgery." Defendant's forgery counts are subject to the four-year statute of limitations provided under section 801.5.[2] (§§ 801.5, 803, subd. (c).) The limitations period begins to run at

---

[2] Section 803, subdivision (c) applies to "an offense punishable by imprisonment in the state prison or imprisonment pursuant to subdivision (h) of section 1170, a material element of which is fraud or breach of fiduciary obligation." Section 801.5 states that "any offense described in subdivision (c) of section 803 shall be commenced within four years after discovery of the commission of the offense, or within four years after the completion of the offense, whichever is later."

7

the time the offense is discovered, or when the offense is completed, whichever is later. (§ 801.5.) Prosecution for an offense is commenced when any of the following occurs: "(a) An indictment or information is filed. [¶] (b) A complaint is filed charging a misdemeanor or infraction. [¶] (c) The defendant is arraigned on a complaint that charges the defendant with a felony. [¶] (d) An arrest warrant or bench warrant is issued, provided the warrant names or describes the defendant with the same degree of particularity required for an indictment, information, or complaint." (§ 804.) The statute of limitations may be tolled when a "prosecution of the same person for the same conduct is pending in a court of this state." (§ 803, subd. (b).)

Defendant and the People agree the offenses occurred in January 2007, when Valdez's identity was stolen and used to secure the deeds of trust. During trial, Valdez testified he did not discover the offense until mid-March 2007. Defendant concedes an arrest warrant was issued on March 2, 2011. However, she argues the four forgery offenses charged in counts 4, 6, 7 and 8 were not listed on the warrant or complaint and were not charged until April 19, 2012, when an information was filed. Therefore, she insists the arrest warrant and complaint filed in March 2011 did not toll the limitations period for the forgery offenses, rendering the charges time-barred. She maintains her trial attorney's failure to pursue this defense was inexplicable and caused her prejudice. We reject this argument, because the information alleged sufficient facts indicating the statute of limitations for the offenses were tolled under section 803, subdivision (b), and the prosecution could have amended the information to specifically allege tolling had her counsel objected.

If a pleading is barred by the statute of limitations, the prosecution must allege facts that will bring the action back within the applicable limitations period. (*People v. Crosby* (1962) 58 Cal.2d 713, 724.) "Based on the foregoing rule we have required the plaintiff, in cases where an action is brought more than three years after the commission

8

of the fraud, to plead and prove: (1) when and how the facts concerning the fraud became known to him; (2) lack of knowledge prior to that time; (3) that he had no means of knowledge or notice which followed by inquiry would have shown at an earlier date the circumstances upon which the cause of action is founded."[3] (*People v. Zamora* (1976) 18 Cal.3d 538, 562 (*Zamora*).)

Here the information alleged facts showing the statute of limitations in the forgery counts had been tolled due to the filing of the arrest warrant in March 2011. The prosecution orally amended the information to allege Valdez did not discover the crime had been committed until mid-March 2007, when he called Montoya about purchasing a home. The information further stated that prior to his contact with Montoya, Valdez had no actual or constructive knowledge of the crimes, and would have had no reason to know documents were signed under his name because all the relevant documents were under the defendant and her agents' control. The amended information also asserted the prosecution commenced after issuance of an arrest warrant on March 2, 2011. The time period between mid-March 2007 and March 2, 2011, being less than four years, the prosecution would not have been untimely under sections 801.5 and 803.

Defendant contends her trial counsel neglected to argue the prosecution did not specifically allege the statute of limitations had been tolled under section 803, subdivision (b), because "prosecution of the same person for the same conduct [was] pending in a court of this state." She insists the People failed to allege facts showing the forgery charges were based on the same conduct as the charges that had already been filed, citing to *Zamora*, *supra*, 18 Cal.3d at page 565 and *In re DeMillo* (1975) 14 Cal.3d 598 (*DeMillo*). In *Zamora*, our Supreme Court held an accusatory pleading that seeks to

---

[3] When *Zamora* was decided, the applicable statute of limitations for an offense of fraud was three years. Section 801.5, which provides a four-year statute of limitations, was enacted in 1986. (Stats. 1986, ch. 1324, § 2.)

avoid being time-barred under the discovery provisions of the fraud statute must plead certain facts, including the date on which the offense was discovered, who discovered the offense, the victim's lack of knowledge, both actual and constructive, and the reason why the offense was not discovered earlier. (*Zamora*, *supra*, at p. 565, fn. 26.) In *DeMillo*, the court determined that the action was time-barred because the complaint contained no factual allegations that would prove tolling. (*DeMillo*, *supra*, at p. 602.)

As we previously noted, the information in this case contained the requisite facts under *Zamora*. And unlike *DeMillo*, facts establishing tolling due to the delay in discovering the fraud were alleged in the information, including when the arrest warrant was filed, when Valdez discovered the offense, and why earlier discovery was not possible. The only allegation missing in the information was a statement the offenses had been tolled under section 803, subdivision (b) when the arrest warrant and complaint were filed, because the offenses arose out of the same conduct. However, it was clear from the alleged facts that the forgery charges were based on the same offenses charged in the arrest warrant and complaint. The original complaint alleged defendant had knowingly procured a false and forged document and had knowingly used Valdez's personal identifying information without his consent. Counts 4, 6, 7 and 8 of the information charged defendant with counterfeiting Valdez's handwriting.

Furthermore, had defendant's trial counsel argued the prosecution failed to allege tolling under section 803, subdivision (b), the prosecution could have amended the information under section 1009 because the amendment would not have changed the offense charged or prejudiced her rights. (See *People v. Chadd* (1981) 28 Cal.3d 739, 758 ["[a]n amendment adding allegations tolling the statute of limitations does not 'change the offense charged' "].) Since "[r]epresentation does not become deficient for failing to make meritless objections," her counsel was not ineffective for failing to pursue this line of defense. (*People v. Ochoa* (1998) 19 Cal.4th 353, 463.)

10

We also reject defendant's argument her trial counsel prejudiced her when he failed to object when the trial court took judicial notice that the prosecution for her charges commenced when the arrest warrant and complaint were filed on March 2, 2011. Defendant argues her counsel should have objected because "whether the later-charged forgery offenses were the 'same conduct' as the earlier charged offenses calls for a factual evaluation inappropriate for judicial notice."

Defendant cannot demonstrate prejudice on this point. There is no dispute that the arrest warrant and complaint for the earlier charges were filed in March 2011. What is disputed is whether the later charges are part of the same conduct charged in the earlier prosecution and tolled pursuant to section 803, subdivision (b), an issue courts have determined as a matter of law. In *People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1441-1442, the appellate court determined child abuse charges were based on the same conduct alleged in earlier charges. Similarly, in *People v. Bell* (1996) 45 Cal.App.4th 1030, 1064, the court determined charges of forgery and filing a false petition for bankruptcy or grant deeds were based on the same conduct as the defendant's rent skimming charges. Therefore, even if her trial counsel had objected, the trial court could have determined the forgery offenses arose out of the same conduct as the earlier prosecution.

Indeed, defendant herself concedes that "if the court considers the timeliness of the forgery charges under section 803, subdivision (b), notwithstanding the prosecution's failure to allege facts making those charges timely under that provision, the charges will be considered timely under *People v. Bell* (1996) 45 Cal.App.4th 1030." We agree with defendant's assessment. Courts have recognized the " 'flexibility of definition' in the phrase 'the same conduct.' " (*People v. Hamlin*, *supra*, 170 Cal.App.4th at p. 1441.) Here the forgery offenses arose out of the same criminal conduct, the theft of Valdez's identity and use of his personal information to secure deeds of trust to finance the purchase of the Curtner Avenue house. Therefore, the charges were timely, as the

11

limitations period was tolled under section 803, subdivision (b) when the criminal arrest warrant and complaint were filed in March 2011.

**Statute of Limitations Defense for Counts 1, 2, 3 and 5**

Defendant also argues her trial counsel rendered ineffective assistance for failing to pursue a statute of limitations argument on the count of obtaining money by false pretenses (§ 532; count 1), the count of using personal identifying information without authorization (§ 530.5, subd. (a); count 2), and the two counts of recording a false instrument (§ 115; counts 3 & 5), which were subject to a four-year statute of limitations under sections 801.5 and 803.5.

She argues her trial counsel did not engage in basic cross examination of Valdez to pursue the defense. The arrest warrant and complaint were filed March 2, 2011. Defendant contends Valdez's testimony he discovered the crimes sometime in mid-March 2007 was vague and generic. Therefore, defendant insists her trial counsel should have asked Valdez more questions about when he discovered the offenses, or if he had any documents to corroborate his testimony. She also insists her trial counsel should have impeached Valdez to render his testimony less credible, because Valdez provided a different narrative of how he discovered the fraud in his March 26, 2007 police report.

These arguments fail because defendant has not affirmatively demonstrated her counsel had no rational tactical purpose for his omissions. (*People v. Frye* (1998) 18 Cal.4th 894.) Her counsel pursued a defense that Chow, the loan broker, was the one who perpetrated the fraud. Defendant herself testified she had nothing to do with the loan applications and had only referred Vasquez Valdez and Niquen to Chow. Her counsel questioned a former employee of Century 21 Su Casa who asserted there was an individual named Jose who worked on houses for the real estate agents at defendant's agency, corroborating her testimony about Vasquez Valdez.

12

If accepted by the jury, this defense would have exonerated defendant. "Because after a conviction it is all too easy to criticize defense counsel and claim ineffective assistance, a court must eliminate the distorting effects of hindsight by indulging 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ' " (*People v. Mendoza* (2000) 24 Cal.4th 130, 158.) Defendant's counsel may not have wanted to pursue a vigorous statute of limitations defense or cross examination of Valdez as it may have drawn away from defendant's credibility, taking focus away from her defense that she was innocent of any wrongdoing. Defendant has therefore failed to meet her burden to establish her counsel's tactics fell outside the wide range of professional competency.

2. *Sufficiency of the Evidence*

Counts 3 and 5 of the information charged defendant with recording, or causing to be recorded, false instruments in violation of section 115. Defendant argues there was insufficient evidence she caused the deeds of trust to be recorded. She also argues that although deeds of trust are commonly recorded, "it cannot be said, as a matter of law, that procuring a forged signature on a deed of trust will necessarily lead to it being recorded." We conclude sufficient evidence supports her convictions for violating section 115.

The applicable standard of review is well settled. "In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence--evidence that is reasonable, credible and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same

13

standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129; see also *People v. Meza* (1995) 38 Cal.App.4th 1741, 1745.)

Section 115, subdivision (a), provides "[e]very person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony." " '[S]ection 115 was designed to prevent the recordation of spurious documents knowingly offered for [the] record. [Citation.]' [Citation.] ' "The core purpose of . . . section 115 is to protect the integrity and reliability of public records." [Citations.] This purpose is served by an interpretation that prohibits any knowing falsification of public records.' " (*People v. Denman* (2013) 218 Cal.App.4th 800, 808.)

In *People v. Garfield* (1985) 40 Cal.3d 192, our Supreme Court considered a case involving a defendant's conviction under section 115 for filing a false or forged will. The *Garfield* court concluded the "gravamen of the charged offense is the *offering* for probate of a will known to be false or forged. [Citation.] The offense was complete at the moment defendant offered the will for probate with knowledge of its falsity. The fact that the will was subsequently accepted for filing and became a part of the public record is not relevant to the statutory proscription. Let us assume, for example, that the forgery here had been discovered before the will had been officially recorded as a public document, or that the will had not been accepted for filing because of some technical defect unrelated to the forgery. In either case defendant would have been guilty of violating section 115. He certainly could not have asserted as a defense that the forged will he offered for filing had not yet been recorded. Whether or not a violation of section 115 actually produces a false public record is simply not material to the offense defined by that statute." (*People v. Garfield, supra,* at p. 195; see also *Generes v. Justice Court*

14

(1980) 106 Cal.App.3d 678, 682 ["[t]he crime is complete when the deed has been prepared so that 'upon its face it will have the effect of defrauding one who acts upon it as genuine' "].)

Additionally, it is immaterial if the false or forged document was filed by the defendant herself or at her behest. (*People v. Geibel* (1949) 93 Cal.App.2d 147, 169.) In *Geibel*, the Second Appellate District concluded sufficient evidence supported a violation of section 115 when there was evidence a will was forged, the defendant had possession of the will, and the will was filed for probate in the county clerk's office. (*People v. Geibel*, *supra*, at p. 169.)

Here there was sufficient evidence defendant procured the false deed of trust. Garcia testified that defendant asked him to sign various documents using Valdez's name under a power of attorney. Garcia and the notary also testified that defendant was present at the time the documents were signed and notarized. Defendant herself testified that once the documents were signed by the buyers and the sellers the title company would record the documents. Furthermore, it was established that the deeds of trust were recorded with Santa Clara County.

Defendant would have violated section 115 when the false deeds of trust were signed. There need not be evidence or proof she brought the deeds of trust to the county recorder's office, or she sent them to the recorder's office to be filed. (*People v. Geibel*, *supra*, 93 Cal.App.2d at p. 169.) There was sufficient evidence in the record to support the jury's conviction on these counts.

### DISPOSITION

The judgment is affirmed.

15

_____

Premo, Acting P.J.

WE CONCUR:


_____

Elia, J.


_____

Mihara, J.